FILED

FEB 2 0 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **S U P E R S E D I N G** |
| | ) | **I N D I C T M E N T** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ZUBAIR MEHMET ABDUR RAZZAQ AL | ) | CASE NO. <u>1:24-CR-00017</u> |
| ZUBAIR, aka ZUBAIR MEHMET | ) | Title 18, United States Code, |
| ABDUR RAZZAQ, | ) | Sections 371, 641, 666, 1071, |
| MUZZAMMIL MUHAMMAD AL ZUBAIR, | ) | 1343, 1349, 1951(a), 1956(h), |
| aka MUZZAMMIL IBN MUHAMMAD, | ) | 1957, and 2; Title 26, United |
| MICHAEL LEON SMEDLEY, | ) | States Code, Sections 7203 and |
| | ) | 7206(2) |
| Defendants. | ) | |

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

### *The Defendants and Relevant Businesses*

1. Defendant ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ ("ZUBAIR AL ZUBAIR"), was born in Cleveland, Ohio. From approximately 2008 to 2020, ZUBAIR AL ZUBAIR resided in the United Arab Emirates ("U.A.E."). In approximately 2020, ZUBAIR AL ZUBAIR moved to the Cleveland, Ohio area and has resided in the Northern District of Ohio ever since. Despite having no familial relationships with any member of royal families in the U.A.E. or any other country, ZUBAIR AL ZUBAIR falsely claimed to be a member of a royal family in the U.A.E., and often used the honorific "His Excellency" or "H.E." in correspondence. He also falsely claimed that he had married a "princess" from a royal family in the U.A.E. ZUBAIR AL ZUBAIR frequently made false claims that his family had extensive business operations and was extraordinarily wealthy.

ZUBAIR also falsely claimed to have personal or family connections with the rulers and governments of multiple foreign countries and businesses.

2.      Defendant MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD ("MUZZAMMIL AL ZUBAIR"), was born in Cleveland, Ohio, and was a resident of the Cleveland, Ohio area in the Northern District of Ohio.  MUZZAMMIL AL ZUBAIR claimed to be a hedge fund manager.  MUZZAMMIL AL ZUBAIR was not registered as an Investment Adviser with the Securities and Exchange Commission or as a broker with the Financial Industry Regulatory Authority ("FINRA").  MUZZAMMIL AL ZUBAIR's only education on hedge funds was from watching YouTube videos.  MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR were brothers.

3.      Dubai Bridge Investments was a business operated by ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR.  According to records on file with the Ohio Secretary of State, Dubai Bridge Investments, LLC ("Dubai Bridge Investments" or "DBI") was an active foreign limited liability company doing business in Ohio as of December 22, 2020.  The agent/registrant was listed as MUZZAMMIL AL ZUBAIR.  According to Delaware business record filings, Dubai Bridge Investments was incorporated in Delaware on December 16, 2013, as a limited liability company.  According to an application with the Small Business Administration, ZUBAIR AL ZUBAIR owned 51% and MUZZAMMIL AL ZUBAIR owned 49% of Dubai Bridge Investments.  According to its webpage, Dubai Bridge Investments claimed to be "[a]n innovative hybrid of private equity and venture capital."  The website claimed the company was "headquartered in both Dubai and North America," and "focus[ed] on key areas such as energy and mining, food and beverage, transportation, consumer product distribution, and technology." The website identified ZUBAIR AL ZUBAIR as its chairperson and MUZZAMMIL AL

2

ZUBAIR as managing partner.  ZUBAIR AL ZUBAIR's biography on the website claimed that he "has created successful ventures by building relationships throughout the business and political worlds."  MUZZAMMIL AL ZUBAIR's biography on the website claimed that he "founded the family's vast capital market's arm as well as spearheads the family's financial operations and mergers and acquisitions."  Dubai Bridge Investments maintained multiple bank accounts, including accounts at JP Morgan Chase ending in 0302 and 0079 and an account at PNC Bank ending in 2216.  ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR were authorized signatories on these accounts.

4.     Al Zubair Capital was a business operated by ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR.  On May 16, 2020, Al Zubair Capital LTD ("Al Zubair Capital") was registered with the Ohio Secretary of State as a foreign for-profit limited liability company.  The registered agent was MUZZAMMIL AL ZUBAIR.  The company was originally incorporated in Delaware on May 6, 2020, as Al Zubair Capital LLC.  Al Zubair Capital maintained a bank account with JP Morgan Chase ending in 9283.  ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR were authorized signatories for the account.  Al Zubair Capital maintained an account with TD Ameritrade, an online brokerage service.  MUZZAMMIL AL ZUBAIR signed and submitted the application to set up this account and was the authorized user.

5.     Defendant MICHAEL LEON SMEDLEY was a resident of the Cleveland, Ohio, area, in the Northern District of Ohio.  SMEDLEY was the Chief of Staff and Executive Assistant to the Mayor of East Cleveland, a role he assumed in or around February 2014.  In his role as Chief of Staff and Executive Assistant, SMEDLEY's job duties and responsibilities included helping with the economic development of East Cleveland by acting as an advisor to the Mayor, leading strategic initiatives for East Cleveland, coordinating and ensuring the day-to-

day operations of the Mayor's office, coordinating actions of other departments in the City of East Cleveland, and facilitating tasks and actions in support of East Cleveland's daily operational and strategic goals.

*Cryptocurrency Mining*

6.     Cryptocurrency mining was the process by which computers solve a complicated mathematical equation in order to validate cryptocurrency transactions and earn new cryptocurrency.  Cryptocurrency mining required a large amount of computing power, often utilizing hundreds or thousands of individual mining computer terminals known as "miners." These miners were often operated together within a larger container, similar to an industrial shipping container.  One brand name for these containers was "Antbox."  A cryptocurrency mining operation could use thousands of miners housed in hundreds of containers.

7.     To be profitable, cryptocurrency mining operations required a great deal of inexpensive electricity and a large amount of available space, such as large warehouses or industrial parks.  Miners gave off a great deal of heat, requiring noisy industrial cooling. Because of the generated heat, mining operations operated most efficiently in cooler climates. Former industrial sites in the United States were considered to be suitable prospective locations for cryptocurrency mining.

*Nela Park*

8.     Nela Park was located in East Cleveland, Ohio.  Nela Park, named after the National Electric Lamp Association, was one of the first industrial parks in the United States when it was built in approximately 1913.  General Electric owned and operated Nela Park for many years.  In 2021, Nela Park was owned by GE Lighting, which had previously been a division of General Electric.  In 2021, the property was for sale by GE Lighting. The property

4

was sold to Phoenix Investors in the spring of 2022. At no time did ZUBAIR, MUZZAMMIL, any member of their family, or any business they own have ownership, control, or any possessory interest over or in Nela Park or any of its land or buildings.

*The Small Business Administration's Economic Injury Disaster Loan Program*

9.     The United States Small Business Administration ("SBA") was an executive branch agency of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small business and to assist in the economic recovery of communities after disasters.

10.     The Coronavirus Aid, Relief and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and was designed to provide emergency financial assistance to Americans suffering the economic effects caused by the COVID-19 pandemic. One source of relief under the CARES Act was authorization of the SBA to issue loans to small businesses and non-profit entities experiencing revenue loss due to the pandemic.

11.     One form of such assistance was the Economic Injury Disaster Loan ("EIDL") program, which provided loan assistance for certain businesses negatively affected by the COVID-19 pandemic. To qualify for an EIDL loan, a business must have, among other requirements, suffered working capital losses due to the COVID-19 pandemic.

12.     Applicants for EIDL loans used the SBA online portal to submit their application materials. The servers that processed the EIDL loan applications were based in the state of Iowa.

13.     Applicants had to certify that the information in the application was true and correct, under the penalty of perjury and applicable statutes. The application process involved filling out data fields relating to the size and ownership of the affected business entity, and other information about the relevant business for the 12 months prior to COVID-19 impacting the

national economy, such as the number of employees in the business, the gross business revenues realized, and the cost of goods sold. This information, submitted by the applicant, was then used by SBA systems to determine whether the application would be approved, and to calculate the amount of money the applicant was eligible to receive.

14.     Pursuant to the provision governing the EIDL program, loan proceeds could only be used by the affected business receiving EIDL loans for certain permissible expenses. The loans could be used by the business to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the COVID-19 disaster not occurred. The applicant was required to promise in the Loan Authorization and Agreement that the EIDL funds would be used solely as working capital to alleviate economic injury caused by the COVID-19 disaster.

*Victims*

15.     Victim 1, a person known to the Grand Jury, was a resident of the U.A.E. who had a personal, romantic relationship with ZUBAIR AL ZUBAIR.

16.     Victim 2, a person known to the Grand Jury, was a Chinese national involved in the business of cryptocurrency mining in China. After China banned cryptocurrency mining in approximately 2021, Victim 2 traveled to the United States to attempt to continue cryptocurrency mining. While in the United States, Victim 2 scouted potential locations for cryptocurrency mining. Victim 2 operated a cryptocurrency mining company ("Cryptocurrency Mining Company 1"). ZUBAIR AL ZUBAIR developed a close, personal relationship with Victim 2 that Victim 2 believed was romantic in nature.

17.     Victim Company 1, a company known to the Grand Jury, was the owner of a commercial property in Cleveland, Ohio.

18.     Victim 3, a person known to the Grand Jury, was the owner of a residence in

Bratenahl, Ohio.

*Additional Relevant Entities and Individuals*

19.     Individual 1, a person known to the Grand Jury, was an associate of both ZUBAIR AL ZUBAIR and Victim 2 who lived in Cleveland, Ohio.

20.     Realtor 1, a person known to the Grand Jury, was a realtor in Cleveland, Ohio, who was hired by ZUBAIR AL ZUBAIR to represent him on proposed real estate transactions.

21.     Canadian Company 1 was a consulting business which purchased and resold cryptocurrency mining contracts and equipment.

22.     Businessperson 1, a person known to the Grand Jury, was located in Romania.

23.     Businessperson 2, a person known to the Grand Jury, was a commodities broker located in New York, New York.

24.     Businessperson 3, a person known to the Grand Jury, was located in the U.A.E.

25.     Businessperson 4, a person known to the Grand Jury, was located in the U.A.E.

26.     Businessperson 5, a person known to the Grand Jury, was located in Indonesia.

<u>COUNT 1</u>
(Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury charges:

27.     The factual allegations contained in paragraphs 1 through 26 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

28.     From in or around June 2020 to in or around August 2023, in the Northern District of Ohio, Eastern Division and elsewhere, Defendants ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, and MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, and others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree to devise and intend to

devise schemes and artifices to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such schemes and artifices, and attempting to do so, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signals, signs, pictures and sounds: that is, to knowingly make and cause to be made interstate wire communications in furtherance of said schemes and artifices to defraud, in violation of Title 18, United States Code, Section 1343.

Object of the Conspiracy

29.     It was the object of the conspiracy for ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR to enrich themselves by using multiple schemes to obtain funds, goods and property under false pretenses to use for their own personal benefit.

Manner and Means of the Conspiracy

It was part of the conspiracy that:

30.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR created the illusion that they were sophisticated and wealthy investors with important political, business, and family connections who operated successful investment businesses to lure potential victims into investing funds with them or engaging in other financial transactions.

31.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR used false statements and claims about their wealth, business connections, familial connections, political connections, foreign connections, experience, and property ownership to convince victims to provide them with access to funds, real property, and goods that they could then exploit to their own benefit.

32.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR promised large and extraordinary returns and payments to victims.

8

33.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR altered bank and investment account statements to show that they had greater funds than they had in order to convince victims of their financial resources and to provide false documentation of the status of victims' investments.

34.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR utilized interstate wire communications and money transfers in furtherance of their scheme.

35.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR used their businesses, Dubai Bridge Investments and Al Zubair Capital, in furtherance of their schemes to create a false illusion of prosperity and success and as vehicles for receiving and transferring the proceeds of their scheme.

36.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR shared in the proceeds of their schemes, which they spent on luxury vehicles, travel on private jets, luxury travel, lavish hotel stays, entertainment, shopping, jewelry, firearms, and other luxury items.

37.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR used multiple bank accounts and made multiple financial transactions with the proceeds of their schemes to conceal the source of the funds.

38.     When victims complained about having lost money, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR made limited payments to them to attempt to quiet them, before entirely ceasing all communications.

39.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR followed a pattern of using schemes to obtain funds from one victim, exhausting those funds, and then obtaining funds from a new victim.

40.     ZUBAIR AL ZUBAIR established controlling, romantic relationships with

victims, which made it less likely that they would challenge or question his actions.

41.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR offered benefits such as cash, checks, expensive meals, and Cleveland Browns' tickets to Smedley, a public official in East Cleveland, in exchange for Smedley and others performing official acts for their benefit that they used to perpetuate their schemes, including arranging for the appointment of ZUBAIR AL ZUBAIR as an international economic advisor to the City of East Cleveland and providing East Cleveland business cards with the title to ZUBAIR AL ZUBAIR.

42.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR used claims of having political influence, including official titles in the City of East Cleveland, to attempt to convince potential investors to conduct transactions with them and provide them with funds.

43.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR executed and attempted to execute a continuing series of schemes that were based on false representations regarding their wealth, family and political connections, experience, and business operations.  As they spent the proceeds from one scheme, they developed and moved on to the next scheme.  These schemes, included but were not limited to, the following:

*U.A.E. Investor Scheme*

44.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR defrauded Victim 1 of funds in a fraudulent investment scheme.  Starting in June 2020, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR obtained a series of wire transfers from Victim 1, who was in the U.A.E. and was involved in a romantic relationship with ZUBAIR AL ZUBAIR.  These wire transfers were for investments on behalf of Victim 1.  All of the funds provided by Victim 1 in the first wire transfer were invested in the Al Zubair Capital TD Ameritrade account. As Victim 1 sent further payments, a smaller percentage of the funds was invested in the Al Zubair Capital

TD Ameritrade account.  The uninvested funds were used for the personal benefit of ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR, while the funds that were invested were eventually either lost or transferred to accounts controlled by ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR and used for their own personal benefit.  In order to maintain the appearance that ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR were investing Victim 1's funds in a successful investment account, ZUBAIR AL ZUBAIR emailed Victim 1 altered TD Ameritrade account statements that greatly inflated the amounts and profits generated in the account, when compared to the actual status of the account.

45.     On or about April 1, 2021, ZUBAIR AL ZUBAIR sent Victim 1 an email falsely promising extraordinarily high returns to invest in an oilfield company.  Victim 1 then wire transferred $450,000 to ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR.  ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR did not spend any of these funds on an oilfield company investment.  Instead, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR invested a portion in the Al Zubair Capital TD Ameritrade account and spent the rest for their own personal benefit.  In all, Victim 1 sent ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR $860,875.46.  ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR sent Victim 1 only a small percentage of the amount invested back to her in a series of wire transfers.  The funds that were invested in the TD Ameritrade account eventually were either lost in unprofitable investments or transferred to bank accounts controlled by ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR.  ZUBAIR ignored Victim 1's repeated inquiries and complaints about the status of her investment.

*SBA EIDL Scheme*

46.     In or around February and March 2021, ZUBAIR AL ZUBAIR and

MUZZAMMIL AL ZUBAIR fraudulently applied for and obtained $27,400 from the SBA EIDL program. MUZZAMMIL AL ZUBAIR caused an electronic application for EIDL funds to be submitted on behalf of Dubai Bridge Investments. The application claimed that Dubai Bridge Investments was in the restaurant business even though the business claimed to be an investment company and did not own any restaurants. The loan agreement form was signed by MUZZAMMIL AL ZUBAIR on behalf of Dubai Bridge Investments. According to the terms of the loan, Dubai Bridge Investments was required to "use all the proceeds of this loan solely as working capital to alleviate economic injury caused by disaster."

47.     ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR created a new bank account for Dubai Bridge Investments, the PNC Bank account ending in 2216, on or about February 8, 2021. This account received the proceeds of the loan on March 9, 2021. All of the proceeds were spent by the end of March 2021. Instead of spending the funds on authorized expenses, the funds were primarily spent on personal expenses unrelated to operating Dubai Bridge Investments, including $2,183 on airline tickets, $1,183.68 at a fashion clothing company, $4,000 at a high-end hotel in Cleveland, multiple restaurant purchases, purchases at the Cleveland Aquarium, and 14 ATM withdrawals totaling over $6,000.

*Nela Park Cryptocurrency Mining Scheme*

48.     Between in or around July 2021 and in or around May 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR defrauded Victim 2 out of more than $3,000,000 and cryptocurrency mining equipment worth at least $6,000,000 related to a fraudulent scheme to start a cryptocurrency mining operation at Nela Park. ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR convinced Victim 2 to invest in a proposed cryptocurrency mining project at Nela Park by falsely claiming that they controlled Nela Park and could obtain large

amounts of electrical power at a cheap cost.  Based on these representations, on or about August 11, 2021, Victim 2 signed a contract with Dubai Bridge Investments to set up cryptocurrency mining at Nela Park in which Victim 2 agreed to pay $3,000,000 to Dubai Bridge Investments in a series of payments.  The first $1,000,000 was due upon signing, and the other $2,000,000 was due when certain benchmarks were met.  Victim 2 paid the first $1,000,000 after signing the contract.  Despite not actually owning or controlling Nela Park in any way, ZUBAIR AL ZUBAIR requested early payment of the $2,000,000 from Victim 2 by falsely claiming that the money was needed to pay for upgrades to Nela Park.  After Victim 2 provided the funds in September 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR spent most of the funds on personal items and did not use it for upgrades to Nela Park.

49.     Victim 2 arranged for the shipment of hundreds of containers and thousands of miners from China to Nela Park.  Because ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR did not actually own Nela Park, they falsely informed Victim 2 that there was a mercury contamination problem at Nela Park that prevented them from shipping the containers and miners there.  Later, when Victim 2 saw a news report that Nela Park had been sold to Phoenix Investors, and not to ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR, ZUBAIR AL ZUBAIR claimed the reason was the mercury contamination.

50.     In the spring of 2022, after Victim 2 complained about the status of the Nela Park cryptocurrency mining project, ZUBAIR made a new agreement with Victim 2 in which he claimed his family would pay Victim 2 $33,000,000 to invest in the cryptocurrency mining project.  ZUBAIR AL ZUBAIR then told Victim 2 that in order to send the funds to her bank account, they needed a series of smaller transactions to establish a history between the accounts. As a result, ZUBAIR AL ZUBAIR requested that Victim 2 send several wire transfers totaling

$160,000 to his personal bank account.

51. In March and April 2022, ZUBAIR AL ZUBAIR told Victim 2 that they needed to display the mining computers for political officials and the bank in order to get the $33,000,000 payment he had promised. Victim 2 agreed to temporarily display the miners. She gave access to the storage facility where the miners were stored to MUZZAMMIL AL ZUBAIR. MUZZAMMIL AL ZUBAIR took 1,067 miners from the storage facility. Instead of displaying the miners, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR sold them to a Canadian company for over $6,000,000 without Victim 2's permission. After Victim 2 repeatedly asked ZUBAIR about the status of the miners that were taken for display and demanded the $33,000,000 that ZUBAIR had promised, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR made a series of smaller payments totaling $800,000 to Victim 2 from the proceeds. ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR never returned the miners. ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR also sold some of the Ant Box containers without Victim 2's knowledge or permission and kept the proceeds.

*Commercial Property Lease Scheme*

52. In February 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR used falsified financial documentation to attempt to obtain a lease for commercial property owned by Victim Company 1 in Cleveland, Ohio, for the stated purpose of opening a high-end restaurant. In order to obtain the lease, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR were required to provide proof of their financial resources to the lessor, Victim Company 1. ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR provided a TD Ameritrade account statement that MUZZAMMIL AL ZUBAIR had altered to show that they had significantly more funds than they did in reality in an attempt to prove that they had sufficient financial resources to make

14

lease payments.

### Residential Property Lease Scheme

53.     In March 2022, ZUBAIR AL ZUBAIR used falsified financial documentation to obtain the lease to a high-end residential property in Bratenahl, Ohio, owned by Victim 3.  When asked to provide proof of financial resources, ZUBAIR AL ZUBAIR provided a bank statement that MUZZAMMIL AL ZUBAIR had altered and caused to be altered to show that he had far greater funds in his account than he had in reality. Victim 3 leased the residence to ZUBAIR AL ZUBAIR, who paid the rent for the first year with proceeds from these schemes.  After renewing the lease for another year, ZUBAIR AL ZUBAIR stopped paying rent and caused and allowed to be caused significant property damage before being evicted in August 2023.

### Military Munitions Scheme

54.     In approximately June and July 2023, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR engaged in a fraudulent attempt to obtain funds in connection with purportedly arranging the sale of millions of dollars-worth of military munitions from foreign suppliers. After obtaining a list of military munitions from a potential purchaser, ZUBAIR AL ZUBAIR contacted individuals in Romania, New York, the U.A.E., and Indonesia about finding sources to supply the munitions and provided them the list of munitions.  To induce these individuals to arrange a transaction brokered by ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR, ZUBAIR AL ZUBAIR falsely claimed that he was seeking the munitions on behalf of his uncle, falsely claimed his uncle was a member of the government of Saudi Arabia, and falsely claimed that he could obtain the required licenses and documentation to conduct the transaction.  The primary purpose of the scheme was not to actually complete the sale of the military munitions, but was instead to use false pretenses to convince the purchaser to transfer to ZUBAIR AL

ZUBAIR and MUZZAMMIL AL ZUBAIR a monetary commission for arranging a transaction, advance payments for the munitions purportedly to be provided, or both.

Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy, and to effect the objects and conceal the existence thereof, a member of the conspiracy performed acts in the Northern District of Ohio, and elsewhere, including, but not limited to, the following:

*U.A.E. Investor Scheme*

55.     On or about May 27, 2020, MUZZAMMIL AL ZUBAIR opened a bank account for Al Zubair Capital ending in 9283 at JP Morgan Chase Bank.

56.     On or about June 24, 2020, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 1 to wire transfer $18,500 to the Al Zubair Capital bank account ending in 9283. The wire transfer referenced "Commercial Investments."

57.     On or about September 8, 2020, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 1 to wire transfer $67,862.86 and $58,550 to the Al Zubair Capital bank account ending in 9283. The wire transfers referenced "Commercial Investments."

58.     On or about November 17, 2020, ZUBAIR AL ZUBAIR emailed Victim 1 a copy of a TD Ameritrade account statement for Al Zubair Capital that had been altered to show greater amounts than were actually in the account.

59.     On or about November 27, 2020, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 1 to wire transfer $65,000, $65,000, $54,400, and $27,200 to the Al Zubair Capital bank account ending in 9283. The wire transfer referenced "ETFS Penn."

60.     On or about January 28, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 1 to wire transfer $54,362.60 to the Al Zubair Capital bank account

ending in 9283.  The wire transfer referenced "Commercial Investments."

61.     On or about February 5, 2021, ZUBAIR AL ZUBAIR emailed Victim 1 a copy of a TD Ameritrade account statement for Al Zubair Capital that had been altered to show greater amounts than were actually in the account.

62.     On or about April 1, 2021, ZUBAIR AL ZUBAIR sent Victim 1 an email in which he sought an investment of approximately $3,000,000 to $4,000,000 by Victim 1 and her family, in which he promised, "The 4mm [$4,000,000] will be covered by a bank guarantee and a q1 [first quarter] net profit north of 120% roi [return on investment]."  He also represented that "by year end—your looking at an appreciation of approximately 9mm usd [$9,000,000] 4mm's [$4,000,000] or in our (beginners case)—3mm usd [$3,000,000] at a 500k [$500,000] placement."

63.     On or about April 1, 2021, ZUBAIR AL ZUBAIR emailed Victim 1 a copy of a TD Ameritrade account statement for Al Zubair Capital that had been altered to show greater amounts than were actually in the account.

64.     On or about April 12, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 1 to wire transfer $450,000 to the Al Zubair Capital bank account ending in 9283.  The wire transfer referenced "Investment."

65.     On or about May 6, 2021, ZUBAIR AL ZUBAIR emailed Victim 1 a copy of a TD Ameritrade account statement for Al Zubair Capital that had been altered to show greater amounts than were actually in the account.

66.     On or about August 8, 2021, ZUBAIR AL ZUBAIR emailed Victim 1 a copy of a TD Ameritrade account statement for Al Zubair Capital that had been altered to show greater amounts than were actually in the account.

*SBA EIDL Scheme*

67.     On or about February 8, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL

ZUBAIR opened a bank account for Dubai Bridge Investments at PNC Bank ending in 2216.

68.     On or about February 19, 2021, MUZZAMMIL AL ZUBAIR caused to be

submitted an online application for a COVID-19 EIDL from the SBA for Dubai Bridge

Investments.

69.     On or about March 2, 2021, MUZZAMMIL AL ZUBAIR electronically signed

the EIDL Loan Agreement for Dubai Bridge Investments.

70.     On or about March 9, 2021, MUZZAMMIL AL ZUBAIR and ZUBAIR AL

ZUBAIR caused $27,400 in EIDL loan proceeds to be transferred to the Dubai Bridge

Investments PNC bank account ending in 2216.

*Nela Park Cryptocurrency Mining Scheme*

71.     In or around July 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR

paid Individual 1 approximately $50,000 to arrange for an introduction with Victim 2 to discuss

a cryptocurrency mining venture at Nela Park.

72.     On or about July 23, 2021, ZUBAIR AL ZUBAIR sent Victim 2 a text message

regarding Nela Park that referred to it as "the property we currently control."

73.     On or about July 25, 2021, ZUBAIR AL ZUBAIR sent an email to Victim 2 that

was copied to MUZZAMMIL AL ZUBAIR with additional information about Nela Park that

referred to it as "our property."

74.     On or about July 25, 2021, ZUBAIR AL ZUBAIR sent another email to Victim 2

that was copied to MUZZAMMIL AL ZUBAIR about Nela Park that said, "There are 30+

buildings under our control and this industrial park."

75.     On or about July 27, 2021, ZUBAIR AL ZUBAIR sent Victim 2 a text message that stated, "We would like to share with you that all electrical power supply and upgrades will be handled and fully provided by us (DBI) as your partner."

76.     On or about July 29, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR toured Nela Park with Victim 2.

77.     On or about August 5, 2021, ZUBAIR AL ZUBAIR sent an email to Victim 2 that was copied to MUZZAMMIL AL ZUBAIR with a chart claiming that Dubai Bridge Investments could provide electrical power at an initial cost of $0.04 per kilowatt/hour with reductions to even less as the project progressed.

78.     On or about August 10, 2021, MUZZAMMIL AL ZUBAIR sent Victim 2 an email, copied to ZUBAIR AL ZUBAIR, with a proposed contract between Dubai Bridge Investments and Victim 2 for developing a cryptocurrency mining venture at Nela Park.

79.     On or about August 10, 2021, MUZZAMMIL AL ZUBAIR replied by email, copied to ZUBAIR AL ZUBAIR.  In his reply, MUZZAMMIL AL ZUBAIR did not provide proof of right of possession or ownership to the property at Nela Park or of capacity to obtain electricity at the quoted cost.  Instead he replied: "Since [Cryptocurrency Mining Company 1] isn't taking all the property as once expected or specified if it will be positioning the containers in a specific structure or outdoors, we will proceed in the following way post execution of agreement: 1. Issuing a notarized bill of rights to operate at the address at the specific structure of your choosing.  2. Our agreement with the power source and transmission company covers not only [Cryptocurrency Mining Company 1] but our additional commitments at Nela Park and surrounding area, which we will keep internal.  However, we will commit per the agreement to granting your power at cost.  I believe Zubair previously discussed this with [Victim 2]."

80. On or about August 11, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR attended a signing ceremony for a contract between Dubai Bridge Investments and Victim 2 at the East Cleveland Mayor's Office that was attended by Victim 2, Individual 1, the East Cleveland Mayor, Smedley, the City's law director, and others.

81. On or about August 11, 2021, ZUBAIR AL ZUBAIR, on behalf of Dubai Bridge Investments, and Victim 2 signed a contract for development of cryptocurrency mining at Nela Park. The contract included the following provisions, each representation constituting an act in furtherance of the scheme:

    a. ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 2 to agree to pay Dubai Bridge Investments a total of $3,000,000. The first $1,000,000 was "due at signing of this agreement," the second $1,000,000 "upon activation of the initial 48 mining machines," and the final $1,000,000 "upon activation of the following 100 megawatts."

    b. Dubai Bridge Investments agreed to "supply [Cryptocurrency Mining Company 1] with its power and pricing shall not exceed .04 cents per kilowatt hour and shall decrease to .035 cents per kilowatt hour within 3-4 months."

    c. The representations and warranties included that Dubai Bridge Investments "possess the rights and authority to lease, rent, borrow and handover occupancy of Nela Park including but not limited to equipment and power sources including general property assets to any developer or tenant of any capacity."

    d. Further, Dubai Bridge Investments "recognizes that completion of ownership and maturity of ownership deed to Nela Park will mature/complete at Q4 of 2021."

82. On or about August 25, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 2 to wire transfer $1,000,000 from a Hong Kong bank account to the Al

Zubair Capital bank account ending in 9283.

83.    On or about September 27, 2021, ZUBAIR AL ZUBAIR sent a text message to Victim 2 requesting that she pay the remaining $2,000,000 due under the contract early, even though the conditions for payment in the contract had not been met: "If fact, it would be helpful if you could release the remaining 2mm [$2,000,000] to my team to help with their upgrade and operation expenses. We're doing a lot of spending and acquisitions to reach 3gw and that's important. So that would really help them. And I don't want everyone to know what I am purchasing. We will announce our power capacities together later."

84.    On or about September 29, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 2 to wire transfer $2,000,000 from a Hong Kong bank account to the Al Zubair Capital bank account ending in 9283.

85.    On or about October 25, 2021, ZUBAIR AL ZUBAIR informed Victim 2 that the large containers for cryptocurrency miners that she had paid to be shipped from Hong Kong to Nela Park could not be delivered to Nela Park because of a mercury contamination problem. ZUBAIR AL ZUBAIR sent Victim 2 a copy of a report that he claimed showed there was mercury contamination at the site. In reality, the report was about providing a permit for limited mercury discharge to Nela Park.

86.    In or around October 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Victim 2 to place the larger containers for cryptocurrency miners that she had shipped from Hong Kong into storage.

87.    In or around March 2022, ZUBAIR AL ZUBAIR caused Victim 2 to make a new agreement in which he promised that his family would provide $33,000,000 in payments to Victim 2 to fund the Nela Park cryptocurrency mining project and Victim 2 agreed to provide

1,500 miners.

88.    On or about March 16, 2022, after Victim 2 complained about problems with cryptocurrency mining in Kazakhstan, ZUBAIR AL ZUBAIR text messaged, "I know the ruling family there.  They deal with my family alot in Dubai."

89.    On or about March 16, 2022, ZUBAIR AL ZUBAIR told Victim 2 by text message that she needed to send a wire transfer to his personal bank account so that they could "establish a transaction history" between their accounts before he transferred the $33,000,000 he had promised to her account.

90.    On or about March 16, 2022, ZUBAIR AL ZUBAIR caused Victim 2 to wire transfer $40,000 to his personal bank account.

91.    On or about March 22, 2022, ZUBAIR AL ZUBAIR sent a text message to Victim 2 requesting additional wire transfers to his personal account: "I was talking to our Dubai and USA accountant.  To be safe from certain government exposure we need 3 previous transactions in total between us… Totaling at least 75-80k.  So you need to send 2 more transfers. Maybe 20k and another 10-15k =75k total.  And then at the end of the month we wire it back to you separately.  Then we send the 5-7 million in 2 separate transactions."

92.    On or about March 22, 2022, ZUBAIR AL ZUBAIR caused Victim 2 to wire transfer $15,000 to his personal bank account.

93.    On or about March 23, 2022, ZUBAIR AL ZUBAIR caused Victim 2 to wire transfer $25,000 to his personal bank account.

94.    On or about March 25, 2022, after Victim 2 saw a news article reporting that Nela Park was being sold to another company, not Dubai Bridge Investments, ZUBAIR AL ZUBAIR text messaged Victim 2 that "this was due to the mercury," and explained, "And now [the other

company] will hand it over to us in April..."

95.     On or about March 29, 2022, ZUBAIR AL ZUBAIR sent another text message to Victim 2 requesting additional wire transfers to his account: "I miss understood Mr. Disny-our family accountant ... He's saying it's necessary that he have at least 3 transactions from your account to mine totalling 158k to 160k USD. He's saying the first payment will reach Wednesday night America time..."

96.     On or about March 29, 2022, ZUBAIR AL ZUBAIR caused Victim 2 to wire transfer $80,000 to his personal bank account.

97.     On or about March 31, 2022, ZUBAIR AL ZUBAIR requested that Victim 2 allow him to display a large number of her cryptocurrency mining machines, which he claimed was necessary to obtain the funds promised to Victim 2.  ZUBAIR AL ZUBAIR texted Victim 2: "Can we please bring 3000 miners to East Cleveland  We should have them for some for Nela Park and another option the mayor will give me  And I want to display them and show them to the mayors and council presidents."

98.     On or about March 31, 2022, ZUBAIR AL ZUBAIR texted Victim 2: "I want 3 thousand [miners] for Nela but we will discuss something for infrastructure at mayors office I need them all there first (at city hall)."

99.     On or about March 31, 2022, ZUBAIR AL ZUBAIR texted Victim 2: "I want to show my family and mayor 3000 machines Display purposes only."

100.     On or about April 4, 2022, ZUBAIR AL ZUBAIR texted Victim 2: "A few things you need to do... Because we are telling the bank it is for our partnership with you in  mining – Bring the 3000 miners to East Cleveland (all 90TH) – mayor's office is probably better – Share me something like detailed receipt for the miners  I will need them for the remaining funds. ... I

think by the 11th we can have 33million [$33,000,000] in your account."

101.   On or about April 4, 2022, after Victim 2 questioned why the bank needed to approve the release of his family's money and asked to confirm that the miners were to be put on display only, ZUBAIR AL ZUBAIR texted Victim 2: "Here's what you need to know sweetheart miss [Victim 2] Firecracker  I told my family and the mayor that we will have them on display for the Ohio congress and council members until we move to Nela then we will shift them there  This is why my family sent the money."

102.   On or about April 4, 2022, after Victim 2 further questioned why he needed to display 3,000 miners instead of 1,500, ZUBAIR AL ZUBAIR texted Victim 2: "They are for showing and proof to mayor and governor to give excellent support and pricing for electricity and many other supports … This is how I get 33 million to arrive … Just send the 1500 no problem … And we will only show the 2000."

103.   On or about April 5, 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR sold at least 3 Antbox containers belonging to Victim 2 without Victim 2's permission.

104.   On or about April 5, 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused $100,000 to be wire transferred into the Dubai Bridge Investments account ending in 0302 for the sale of the Antbox containers.

105.   On or about April 11, 2022, after Victim 2 again asked to confirm if the miners were just for display, ZUBAIR AL ZUBAIR answered, "Correct … It's just to secure all the support for power expansion at Nela – mainly with government funding."

106.   On or about April 27, 2022, ZUBAIR AL ZUBAIR texted Victim 2, "We need at least 1000 [miners] to show."

107.   On or about April 27, 2022, MUZZAMMIL AL ZUBAIR took approximately

24

539 miners belonging to Victim 2 from a storage facility in the Northern District of Ohio.

108.    On or about May 3, 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR agreed to sell 336 of Victim 2's miners to Canadian Company 1 for $2,284,800.

109.    On or about May 4, 2022, MUZZAMMIL AL ZUBAIR took approximately 528 miners belonging to Victim 2 from a storage facility in the Northern District of Ohio.

110.    On or about May 6, 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Canadian Company 1 to wire transfer $2,284,780 to the Dubai Bridge Investments account ending in 0302.

111.    On or about May 18, 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR agreed to sell 723 of Victim 2's miners to Canadian Company 1 for $3,890,000.

112.    On or about May 26, 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused Canadian Company 1 to wire transfer $3,889,980 to the Dubai Bridge Investments account ending in 0302.

113.    On or about June 9, 2022, Victim 2 asked ZUBAIR AL ZUBAIR about Antbox containers that she had discovered were missing. Although ZUBAIR AL ZUBAIR had previously sold the Antbox containers, he falsely responded, "They are in the power testing site I told. You last night With jobs ohio."

114.    On or about July 3, 2022, after Victim 2 again asked about the status of the machines that were taken for display, ZUBAIR AL ZUBAIR falsely claimed that he was paying her for the machines, texting her: "Especially when my family is still sending you money for the machines."

115.    On or about August 2, 2022, after Victim 2 again asked about the status of the cryptocurrency miners that ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR took from

her, ZUBAIR AL ZUBAIR responded by claiming that Victim 2 was supposed to have provided him with 3,000 cryptocurrency miners and containers, but that he "only took a few [cryptocurrency miners] for demonstration and to show my family you were serious."

*Commercial Property Lease Scheme*

116.    On or about February 14, 2022, MUZZAMMIL AL ZUBAIR altered and caused to be altered a TD Ameritrade statement for Al Zubair Capital to falsely show an inflated account balance.

117.    On or about February 14, 2022, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR caused a Dubai Bridge Investments employee to send a TD Ameritrade statement for Al Zubair Capital that had been altered and caused to be altered by MUZZAMMIL AL ZUBAIR to falsely inflate the account balance to Realtor 1.

118.    On or about February 15, 2022, ZUBAIR AL ZUBAIR caused Realtor 1 to send the altered TD Ameritrade account statement to Victim Company 1.

*Residential Property Lease Scheme*

119.    On or about March 13, 2022, MUZZAMMIL AL ZUBAIR altered and caused to be altered a JP Morgan Chase Deposit Account Balance Summary statement dated March 10, 2022, for the Al Zubair Capital bank account to falsely show that the account had more funds in it than it really had.

120.    On or about March 13, 2022, ZUBAIR AL ZUBAIR sent a text message to Realtor 1 with the altered JP Morgan Chase Deposit Account Balance Summary statement dated March 10, 2022, for the Al Zubair Capital account.

121.    On or about March 13, 2022, ZUBAIR AL ZUBAIR caused Realtor 1 to send the altered JP Morgan Chase Deposit Account Balance Summary statement to Victim 3.

*Military Munitions Scheme*

Businessperson 1: Romania

122.    On about June 12, 2023, ZUBAIR AL ZUBAIR sent by text message to Businessperson 1, located in Romania, a list of military munitions he claimed to be seeking. ZUBAIR AL ZUBAIR also provided the destination of the munitions he was seeking: "The goods ultimate destination is KSA [Kingdom of Saudi Arabia] via Kyrgyzstan Govt. Tender."

Businessperson 2: New York

123.    In or around June 2023, ZUBAIR AL ZUBAIR told Businessperson 2, located in New York, that he was obtaining military munitions on behalf of his uncle who was the purchasing agent for the government of Saudi Arabia.

124.    On or about June 15, 2023, ZUBAIR AL ZUBAIR sent the same list of munitions to Businessperson 2 that he previously sent to Businessperson 1.

125.    On or about June 15, 2023, ZUBAIR AL ZUBAIR sent this same list of munitions to MUZZAMMIL AL ZUBAIR, who responded, "Okay cool."

Businessperson 3 and Businessperson 4: U.A.E.

126.    In or around June 2023, ZUBAIR AL ZUBAIR told Businessperson 3, located in the U.A.E, that he was seeking munitions on behalf of his uncle who was a minister in the government of Saudi Arabia.

127.    On or about June 15, 2023, ZUBAIR AL ZUBAIR sent the same list of munitions to Businessperson 3 that he previously sent to Businessperson 1 and Businessperson 2.

128.    On or about June 15, 2023, ZUBAIR AL ZUBAIR texted Businessperson 3: "Keep me posted.  Uncle putting me under pressure."  Businessperson 3 replied by sending an

audio file purporting to be from the potential munitions supplier, along with a text message translating the audio file: "Translation – he can do it."

129.  On or about June 20-21, 2023, Businessperson 3 attempted to arrange a conference call with ZUBAIR AL ZUBAIR; Businessperson 4, who was also located in the U.A.E. and knew a munitions manufacturer in Pakistan; and the munitions manufacturer in Pakistan.  MUZZAMMIL AL ZUBAIR attempted to join this call.  The conference call failed and had to be rescheduled.

130.  On or about June 24, 2023, ZUBAIR AL ZUBAIR participated in a conference call with Businessperson 3 and Businessperson 4 in the U.A.E. and a munitions manufacturer in Pakistan.  During the call, ZUBAIR AL ZUBAIR represented himself to be part of the royal family of Saudi Arabia and that his uncle was the defense minister.  After the manufacturer in Pakistan informed ZUBAIR AL ZUBAIR that he would have to obtain the proper licenses and approvals to purchase the munitions, ZUBAIR AL ZUBAIR responded that this would not be a problem because his uncle was the defense minister of Saudi Arabia.

Businessperson 5:  Indonesia

131.  On or about June 20, 2023, ZUBAIR AL ZUBAIR sent the same list of munitions to Businessperson 5, located in Indonesia, that he previously sent to Businessperson 1, Businessperson 2, and Businessperson 3.  At the top of the list, ZUBAIR AL ZUBAIR wrote: "The goods ultimate destination will be KSA [Kingdom of Saudi Arabia]."

132.  On or about June 27, 2023, Businessperson 5 forwarded text messages to ZUBAIR AL ZUBAIR from a munitions supplier in Singapore with the address of the company and the following instruction: "Hello Mr. *****, please send the LOI [letter of intent] to above

company, attention to Mr. ****." ZUBAIR AL ZUBAIR replied by text message: "Terrific I will have the loi sent over."

133.    On or about June 27, 2023, ZUBAIR AL ZUBAIR invited Businessperson 5 to visit the United States to do business with him by text message and boasted of his political connections in the United States: "I have free land and residency opportunities I can give her in the US. I'm also chief economic advisor to the governor and mayor under diplomatic rank in Ohio. So I have a lot under my control." Immediately after this text message, ZUBAIR AL ZUBAIR texted Businessperson 5 a photo of a City of East Cleveland business card identifying ZUBAIR AL ZUBAIR as "International Economic Advisor."

All in violation of Title 18, United States Code, Section 1349.

COUNTS 2-15
(Wire Fraud, 18 U.S.C. §§ 1343 and 2)

The Grand Jury further charges:

134.    The factual allegations of paragraphs 1 through 26 and 30 through 133 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

135.    From in or around June 2020 to in or around August 2023, Defendants ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, and MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, together with others known and unknown to the Grand Jury, devised and intended to devise schemes and artifices to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

136.    On or about the dates listed below, each transmission a separate and distinct count, in the Northern District of Ohio and elsewhere, Defendants ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR, for the purpose of executing the schemes listed below and

29

described above, and attempting to do so, knowingly transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the following writings, signs, signals, picture and sounds:

| Count | Approx. Date | Scheme | Description of Wire Communication |
|-------|-------------|--------|----------------------------------|
| 2 | April 12, 2021 | U.A.E. Investment Fraud Scheme described in Paragraphs 44-45 | Wire transfer of $450,000 from Victim 1 in the U.A.E. to Al Zubair Capital account ending in 9283 in Ohio described in Paragraph 64 |
| 3 | February 19, 2021 | SBA EIDL Scheme described in Paragraphs 46-47 | Online application for EIDL submitted electronically from Ohio to SBA servers in Iowa described in Paragraph 68 |
| 4 | March 9, 2021 | SBA EIDL Scheme described in Paragraphs 46-47 | ACH deposit from SBA through servers outside of Ohio to Dubai Bridge Investments account ending in 2216 in Ohio described in Paragraph 70 |
| 5 | July 23, 2021 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Text message from ZUBAIR AL ZUBAIR in Ohio to Victim 2 outside Ohio regarding Nela Park that referred to it as "the property we currently control" described in Paragraph 72 |
| 6 | July 25, 2021 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Email from ZUBAIR AL ZUBAIR in Ohio to Victim 2 that referred to "30+ buildings under our control and this industrial park" described in Paragraph 74 that traveled through servers outside Ohio |
| 7 | August 5, 2021 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Email from ZUBAIR AL ZUBAIR to Victim 2 in Ohio with chart that claimed electrical power at $0.04 per kilowatt/hour or less described in Paragraph 77 that traveled through servers outside Ohio |
| 8 | August 10, 2021 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Email from MUZZAMMIL AL ZUBAIR to Victim 2 in Ohio with a proposed contract described in Paragraph 78 that traveled through servers outside Ohio |

| Count | Approx. Date | Scheme | Description of Wire Communication |
|---|---|---|---|
| 9 | August 25, 2021 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Wire transfer of $1,000,000 from Victim 2 from bank account in Hong Kong to Al Zubair Capital account ending in 9283 in Ohio described in Paragraph 82 |
| 10 | September 29, 2021 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Wire transfer of $2,000,000 from Victim 2 from bank account in Hong Kong to Al Zubair Capital account ending in 9283 in Ohio described in Paragraph 84 |
| 11 | May 6, 2022 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Wire transfer of $2,284,780 from Canadian Company 1 in Canada to Dubai Bridge Investments account ending 0302 in Ohio described in Paragraph 110 |
| 12 | May 26, 2022 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Wire transfer of $3,889,980 from Canadian Company 1 in Canada to Dubai Bridge Investments account ending 0302 in Ohio described in Paragraph 112 |
| 13 | July 3, 2022 | Nela Park Cryptocurrency Mining Scheme described in Paragraphs 48-51 | Text message from ZUBAIR AL ZUBAIR outside of Ohio to Victim 2 in Ohio with false claim that "my family is still sending you money for the machines" described in Paragraph 114 |
| 14 | February 15, 2022 | Commercial Property Lease Scheme described in Paragraph 52 | Email from Realtor 1 in Ohio to Victim Company 1 with altered TD Ameritrade statement describe in Paragraph 118 that traveled through servers outside Ohio |
| 15 | March 13, 2022 | Residential Property Lease Scheme described in Paragraph 53 | Text message from Realtor 1 in Ohio to Victim 3 outside United States with altered JP Morgan Chase Deposit Account Balance Summary statement described in Paragraph 121 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

COUNT 16
(Conspiracy to Commit Money Laundering, 18 U.S.C. § 1956(h))

The Grand Jury further charges:

137.    The factual allegations of paragraphs 1 through 26 and 30 through 133 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

138.    From in or around June 2020 to in or around August 2023, in the Northern District of Ohio, Eastern Division and elsewhere, Defendants ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, and MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, and others known and unknown to the Grand Jury, did knowingly combine, conspire, confederate, and agree to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

a.    to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracy to commit wire fraud and wire fraud as alleged in Counts 1 through 15, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.    to knowingly engage and attempt to engage, in monetary transactions by, through or to financial institutions, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, that is, conspiracy to commit wire fraud and wire fraud as alleged in

Counts 1 through 15, in violation of Title 18, United States Code, Section 1957.

Manner and Means of the Conspiracy

It was part of the conspiracy that:

139.    ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR established multiple bank accounts for Dubai Bridge Investments, a bank account for Al Zubair Capital, a TD Ameritrade account for Al Zubair Capital, and personal bank accounts.

140.    After receiving proceeds from the schemes described in Count 1, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR transferred the proceeds among and back and forth between different accounts using checks, cash withdrawals and deposits, and wire transfers.

141.    After conducting financial transactions moving proceeds among these accounts, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR spent the proceeds to their own benefit.

142.    ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR engaged in multiple monetary transactions by, through, and to financial institutions, affecting interstate and foreign commerce, involving proceeds from the schemes described in Count 1, of a value greater than $10,000.00, including making large cash withdrawals and spending on luxury vehicles, travel on private jets, luxury travel, lavish hotel stays, entertainment, shopping, jewelry, firearms, and other luxury items.

All in violation of Title 18, United States Code, Section 1956(h).

Counts 17-20
(Money Laundering, 18 U.S.C. §§ 1957 and 2)

The Grand Jury further charges:

143.    The factual allegations of paragraphs 1 through 26 and 30 through 133 of this

33

Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

144.     On or about the dates set forth below, in the Northern District of Ohio, Eastern Division and elsewhere, Defendants ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, and MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, knowingly engaged and attempted to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, that is, wire transfers of funds, such property have been derived from a specified unlawful activity that is, conspiracy to commit wire fraud and wire fraud, as alleged in Counts 1 through 16 of this Indictment, each transaction constituting a separate offense:

| Count | Date | Monetary Transaction | Amount |
|-------|------|---------------------|--------|
| 17 | January 7, 2022 | Wire transfer from Al Zubair Capital account ending in 9283 to firearms dealer for purchase of security equipment | $15,035 |
| 18 | May 20, 2022 | Debit Card purchase at Saks Fifth Avenue from Dubai Bridge Investments account ending in 0302 | $11,540.88 |
| 19 | June 7, 2022 | Debit Card purchase at Honda of Cleveland Heights from Dubai Bridge Investments account ending in 0302 | $19,745.92 |
| 20 | August 24, 2022 | Wire transfer from Dubai Bridge Investments account ending in 0302 to Cleveland Browns for luxury suite | $83,500 |

All in violation of Title 18, United States Code, Sections 1957 and 2.

Count 21
(Theft of Government Funds, 18 U.S.C. §§ 641 and 2)

The Grand Jury further charges:

145.     The factual allegations of paragraphs 1 through 26 and 30 through 133 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

146.     On or about March 9, 2021, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, and MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD knowing and willfully embezzled, stole, purloined, and converted to their own use money of the United States or any department or agency thereof, of a value exceeding $1,000, to wit: $27,400 in SBA EIDL funds obtained by fraud.

All in violation of Title 18, United States Code, Sections 641 and 2.

Count 22
(Harboring a Fugitive, 18 U.S.C. § 1071)

The Grand Jury further charges:

147.     On or about February 23, 2023, a Grand Jury in the Northern District of Ohio returned an indictment charging Kelvin Bedell with Possession with Intent to Distribute a Controlled Substance and Money Laundering Conspiracy.  On or about February 23, 2023, a warrant was issued for Bedell's arrest on the indictment.

148.     On or about June 24, 2023, ZUBAIR AL ZUBAIR received and read a text message with a link to a news story that described Bedell as a fugitive wanted by the United States Marshal's Service.  After receiving this message, ZUBAIR AL ZUBAIR provided Bedell with transportation and allowed him to stay at his residence.

149.     Between on or about June 24, 2023, and on or about August 8, 2023, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, harbored and concealed Kelvin Bedell, a person for whose arrest a warrant and process had been issued under the provisions of a law of the United States, so as to prevent the discovery and arrest of Kelvin Bedell, after notice and knowledge of the fact that a warrant and process had been issued for the

apprehension of Kelvin Bedell, and which warrant had been issued on a felony charge.

All in violation of Title 18, United States Code, Section 1071.

## COUNT 23
(Aiding and Assisting in the Preparation of a False Tax Return, 26 U.S.C. § 7206(2))

The Grand Jury further charges:

150.    On or about October 11, 2022, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service of ZUBAIR AL ZUBAIR's United States Individual Income Tax Return, Form 1040, for calendar year 2021, which was false and fraudulent as to a material matter. The Form 1040 understated ZUBAIR AL ZUBAIR's total income on line 9 by failing to report income ZUBAIR AL ZUBAIR had that year, whereas ZUBAIR AL ZUBAIR knew that his actual total income substantially exceeded the amount reported, including substantial income received through the offense alleged in Count 1 of this Superseding Indictment.

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT 24
(Aiding and Assisting in the Preparation of a False Tax Return, 26 U.S.C. § 7206(2))

The Grand Jury further charges:

151.    On or about June 10, 2023, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, willfully aided and assisted in, and procured, counseled, and advised the preparation and presentation to the Internal Revenue Service of MUZZAMMIL AL ZUBAIR's Amended United States Individual Income Tax Return, Form 1040-X, for calendar year 2021,

which was false and fraudulent as to a material matter. The Form 1040-X understated MUZZAMMIL AL ZUBAIR's adjusted gross income on line 1, column C, by failing to report income MUZZAMMIL AL ZUBAIR had that year, whereas MUZZAMMIL AL ZUBAIR knew that his actual adjusted gross income substantially exceeded the amount reported, including substantial income received through the offense alleged in Count 1 of this Superseding Indictment.

All in violation of Title 26, United States Code, Section 7206(2).

## COUNT 25
### (Willful Failure to File Tax Return, 26 U.S.C. § 7203)

The Grand Jury further charges:

152.    During calendar year 2022, Defendant ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, a resident of Cleveland, Ohio, had and received gross income in excess of $12,900 for an individual and $19,400 for head of household, including substantial income received through the offense alleged in Count 1 of this Superseding Indictment.  By reason of such gross income, he was required by law, following the close of calendar year 2022, and on or before April 18, 2023, to make an income tax return to the Internal Revenue Service, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Knowing and believing all of the foregoing, he did willfully fail, on or about April 18, 2023, in the Northern District of Ohio, Eastern Division, to make an income tax return.

All in violation of Title 26, United States Code, Section 7203.

COUNT 26
(Conspiracy to Commit Bribery Concerning Programs Receiving Federal Funds,
18 U.S.C. § 371)

The Grand Jury further charges:

153.    The factual allegations of paragraphs 1 through 26 and 30 through 133 of this
Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

154.    The City of East Cleveland was a municipal corporation and a political
subdivision of the State of Ohio located in the Northern District of Ohio.  The City of East
Cleveland received over $10,000 in federal funds during each of the calendar years material to
this count of the Indictment.

155.    Defendant MICHAEL LEON SMEDLEY was an employee and agent of the City
of East Cleveland, as that term is defined in Title 18, United States Code, Section 666(d)(1),
having the titles of Chief of Staff and Executive Assistant to the Mayor.

156.    Jobs Ohio was a non-profit corporation created by the State of Ohio pursuant to
Section 187 of the Ohio Revised Code.  Jobs Ohio's board members were appointed by the
Governor of the State of Ohio.   Jobs Ohio's mission included fostering economic growth and
improving job opportunities in Ohio.

The Conspiracy

157.    From in or around January 2021, and continuing to in or around January 2023, in
the Northern District of Ohio, Eastern Division, Defendants ZUBAIR MEHMET ABDUR
RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, MUZZAMMIL
MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, MICHAEL LEON
SMEDLEY and others known and unknown to the grand jury, did knowingly and intentionally,
conspire, confederate, and agree together and with each other to commit an offense against the

United States, that is, bribery concerning programs receiving federal funds, in violation of Title 18 United States Code, Section 666(a)(1)(B) and (a)(2).

## The Objects of the Conspiracy

158.     The objects of the conspiracy were for: (a) SMEDLEY to corruptly solicit, demand, accept and agree to accept things of value for himself and to the benefit of others, from ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of the City of East Cleveland involving a thing of value of $5,000 and more; (b) for ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR to corruptly give, offer, and agree to give things of value to any person, namely, SMEDLEY, intending to influence SMEDLEY in connection with any business, transaction, and series of transactions of the City of East Cleveland involving a thing of value of $5,000 and more; and (c) for Defendants to promote their financial and personal goals by concealing and attempting to conceal from the City of East Cleveland, the State of Ohio, the public, and law enforcement their corrupt relationship with one another and their solicitations and offers of bribes to and from one another.

## The Manner and Means of the Conspiracy

159.     It was part of the conspiracy that:

a.      MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR would and did corruptly offer to give things of value to SMEDLEY, including but not limited to: checks in excess of $5,000, promises of future employment, money, use of luxury cars, shoes and clothing, food and consumer goods, and tickets to sporting events.

b.      MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR provided and offered to provide these things of value to influence and reward SMEDLEY in connection with

business, transactions and a series of transactions involving the City of East Cleveland, both as requested and as the opportunities arose.

        c.      MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR provided and offered to provide these things of value to SMEDLEY, and SMEDLEY solicited, accepted, and agreed to accept these things of value, in exchange for SMEDLEY using his official position to provide, and cause to be provided, to MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR favorable treatment and official action, including by SMEDLEY using his official position providing advice to other officials, knowing and intending that such advice will form the basis for such favorable official action by those officials, and to exert pressure on other officials to provide such favorable official action.

        d.      The types of business and transactions that MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR sought included but were not limited to:

        i.    Official Jobs and Titles in the City of East Cleveland;

        ii.    Navigating and influencing government agency bureaucracy in East Cleveland and with others;

        iii.    Obtaining official letters on East Cleveland letterhead to influence others and achieve favorable outcomes in administrative, judicial and other proceedings;

        iv.    Hosting official signing ceremonies in the City of East Cleveland;

        v.    Providing City of East Cleveland police badges to ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR;

        vi.    Issuing City of East Cleveland business cards to ZUBAIR AL ZUBAIR; and

vii. Obtaining access to private information available to SMEDLEY that was relevant to the dealings of ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR, including information about law enforcement investigations.

e. Defendants attempted to avoid discovery of their corrupt relationship by, among other things, creating letters of intent to avoid scrutiny by the Ohio Ethics Commission or the City of East Cleveland and by SMEDLEY providing checks to repay some part of the benefits provided by ZUBAIR AL ZUBAIR such as Cleveland Browns tickets at less than full value.

f. ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR used the benefits they obtained from SMEDLEY in furtherance of the fraudulent schemes described in Count 1.

Overt Acts

160. In furtherance of the conspiracy and to effect the objects thereof, a member of the conspiracy committed the following overt acts, among others, in the Northern District of Ohio, and elsewhere:

161. On or about March 6, 2021, MUZZAMMIL AL ZUBAIR sent ZUBAIR AL ZUBAIR a text message stating, "when u go to dinner with smitley use the capital one card but you gotta try & keep it under $215."

162. On or about March 21, 2021, MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR provided SMEDLEY with food.

163. On or about March 28, 2021, MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR provided SMEDLEY with food.

164.     On or about June 17, 2021, MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR offered to provide SMEDLEY with food.

165.     On or about June 24, 2021, MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR offered to feed SMEDLEY and other employees of East Cleveland.

166.     On or about June 28, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR exchanged the following text messages

> ZUBAIR:          We have to pay Smedley.
> MUZZAMMIL:   How much?
> ZUBAIR:          3k

167.     On or about July 9, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR exchanged the following messages:

> ZUBAIR:          Let's book hyde park w/ Smedley for Saturday
> MUZZAMMIL:   Ight [alright] …

168.     On or about July 26, 2021, ZUBAIR AL ZUBAIR sent MUZZAMMIL AL ZUBAIR a text message stating, "Yo Salam Alaik Don't forget Smedley's cigars please," to which MUZZAMMIL AL ZUBAIR replied, "Fasho."

169.     In or around July through August 2021 SMEDLEY arranged to host an official signing ceremony for ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR at East Cleveland City Hall in the Mayor's office.

170.     On or about August 11, 2021, SMEDLEY hosted ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR at the East Cleveland Mayor's office for the official signing ceremony described in Paragraph 80.

171.     On or about August 15, 2021, ZUBAIR AL ZUBAIR sent MUZZAMMIL AL ZUBAIR a text message stating, "Forgot I have Smedley at 5:30."  ZUBAIR AL ZUBAIR then sent MUZZAMMIL AL ZUBAIR a second text message stating, "I booked the adega at 5:30 so

I'll come grab cash right before please." Later that same day, MUZZAMMIL AL ZUBAIR replied, "Okay ..."

172.    On or about September 1, 2021, MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR offered to give a check for approximately $10,000 to SMEDLEY.

173.    On or about September 8, 2021, ZUBAIR AL ZUBAIR sent SMEDLEY a text message regarding the containers used for cryptocurrency mining that Victim 2 shipped from China to the United States described in paragraph 49: "Our containers at the port Headed to us." ZUBAIR AL ZUBAIR then text messaged SMEDLEY a request for his assistance with import taxes on the containers: "So, as you know the Trump administration put Chinese import taxes which will effect our containers unless we apply for an import waiver which exists. Just need to locate it…! We'll need your help please … ."

174.    On or about September 15, 2021, MUZZAMMIL AL ZUBAIR sent ZUBAIR AL ZUBAIR a text message that included a picture of a check from the Al Zubair Capital LLC checking account made out to SMEDLEY in the amount of $10,000. The check was dated September 1, 2021, was signed by MUZZAMMIL AL ZUBAIR, and the memo line stated, "Advisor fee," but it was never cashed or deposited.

175.    On or about September 27, 2021, SMEDLEY and ZUBAIR AL ZUBAIR exchanged the following text messages:

| | |
|---|---|
| SMEDLEY: | Are you still interested in nela park |
| ZUBAIR: | Yes sir |
| ZUBAIR: | Definitely |
| ZUBAIR: | What's on your mind |
| | Got a better way for us to take it over? |
| SMEDLEY: | Can possibly get help from jobs ohio with cleanup and demos |
| ZUBAIR: | Perfect! |

176.     On or about September 27, 2021, ZUBAIR AL ZUBAIR offered to give food to SMEDLEY.

177.     On or about October 11, 2021, MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR offered to provide SMEDLEY with food.

178.     On or about October 11, 2021, SMEDLEY sent the following message to ZUBAIR AL ZUBAIR:

> Dubai Bridge investments
> Double annual salary of 110k will an extra 40k to equal 250k annually paid monthly
>
> 1 year guarantee
>
> Equity in all deals worked on 7%
> Equity in all deals lead 12 to 15 %
> Benchmark bonuses 10k, 15k, 20k
> Mutually agreed upon goals, benchmarks and objectives to identify mutually acceptable outcomes.
> Travel expenses covered outside of compensation
> Signing bonus 25k

179.     On or about October 12, 2021, ZUBAIR AL ZUBAIR sent the proposal from SMEDLEY described in paragraph 178 to MUZZAMMIL AL ZUBAIR, who responded, "Man he's greedy."

180.     On or about October 12, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR exchanged text messages discussing plans to draft a proposed agreement for paying SMEDLEY.  After exchanging these messages, MUZZAMMIL commented: "Mike [SMEDLEY] showing his true colors."

181.     On or about October 12, 2021, MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR offered to provide SMEDLEY with shoes and cash.

182.     On or about October 13, 2021, SMEDLEY sent ZUBAIR AL ZUBAIR a text message, stating, "Waiting on your counter."

183.     On or about October 23, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR exchanged the following text messages:

| | |
|---|---|
| ZUBAIR: | Let's get a cheque together for Mike for October at his old rate |
| | I don't think I'll be keeping him around though |
| MUZZAMMIL: | Ight cool |
| | If he's not expecting it I'll give him a personal check |
| ZUBAIR: | That's cool |
| MUZZAMMIL: | Otherwise it'll be deposited |
| | Withdrawaled |
| ZUBAIR: | Withdrawn |
| MUZZAMMIL: | Thanks |

184.     On or about November 3, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR exchanged the following messages:

| | |
|---|---|
| ZUBAIR: | Yo |
| | Did you handle Mike? |
| MUZZAMMIL: | Waiting for him to hit me back |

185.     On or about November 3, 2021, MUZZAMMIL AL ZUBAIR exchanged multiple text messages with SMEDLEY in an attempt to set up a meeting.

186.     On or about November 4, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR exchanged the following messages:

| | |
|---|---|
| MUZZAMMIL: | He don't know I was giving him a check? |
| ZUBAIR: | Tell him his October payment |
| | "Its been sitting in your desk" |
| ZUBAIR: | Because I'll need that to refer to his November suspension |
| ZUBAIR: | Pause/Hold I should say |

187.     On or about November 4, 2021, MUZZAMMIL AL ZUBAIR and SMEDLEY exchange the following text messages:

| | |
|---|---|
| SMEDLEY: | What did you want earlier |

| | |
|---|---|
| MUZZAMMIL: | Your October check has been sitting on my desk |
| MUZZAMMIL: | Was trying to drop it off |

188.    On or about November 6, 2021, ZUBAIR AL ZUBAIR and SMEDLEY exchanged the following text messages:

| | |
|---|---|
| ZUBAIR: | Amazing |
| | Sounds good |
| | Miss you bruh … |
| | Lets catch up soon |
| | And your October payment is w/Zam |
| SMEDLEY: | Lest do lunch |
| | Lets |
| ZUBAIR: | Okay cool |

189.    In or around November 2021 MUZZAMMIL AL ZUBAIR and ZUBAIR AL ZUBAIR offered to give SMEDLEY a check for approximately $20,000. The check was dated November 3, 2021, was signed by MUZZAMMIL AL ZUBAIR, and the memo line stated, "Advisor fee," but it was never cashed or deposited.

190.    On or about November 9, 2021, SMEDLEY sent ZUBAIR AL ZUBAIR a text message, stating, "Would like to speak with you regarding your real estate development company."

191.    On or about November 9, 2021, SMEDLEY emailed ZUBAIR AL ZUBAIR an email titled "AGREEMENT."  Attached to the email was a one-page document pictured below:

AGREEMENT BETWEEN ZUBAIR FAMILY AND IT'S BUSINESSES and MICHAEL
SMEDLEY

This agreement represents compensation for professional services provide by
Michael Smedley to the Zubair family and its businesses including but not limited
to Dubai Bridge Investments. Michael Smedley will advise the Zubair Family and
its businesses on government affairs, building private sector relationships and
business development.

The compensation will be $10,000.00 a month for consecutive 12 months.

Within the 12 consecutive months progress meetings can be held to determine
increase in compensation.

If there is required travelling beyond 200 miles, the Zubair Family and its
businesses will cover travel and lodging expenses.

_____          _____
Zubair Family and Its Businesses   Date          Michael Smedley   Date

192.     On or about November 9, 2021, SMEDLEY sent a text message to

MUZZAMMIL AL ZUBAIR in which he asked: "Did you get email.  Sent it to Zubair as well."

MUZZAMMIL AL ZUBAIR replied: "Hey Mike.  Yes I received."

193.     On or about November 9, 2021, SMEDLEY and MUZZAMMIL AL ZUBAIR

exchanged the following text messages:

> SMEDLEY:      I take it the agreement i sent isn't feasible
> MUZZAMMIL:   We haven't gotten to it yet, we're in the middle
>                          of a lot right now.  We'll get back to you soon

194.     On or about November 13, 2021, SMEDLEY and ZUBAIR AL ZUBAIR

exchanged the following text messages:

> SMEDLEY:   The reason I sent you the agreement so that I can stay
>                   out of jail representing you
> SMEDLEY:   I needntonbe able to prove ther is an official relationship
>                   or it an be perceived as I am doing this from my public
>                   position

47

> ZUBAIR:    hahahahahhahahaa
> ZUBAIR:    Understood
> SMEDLEY:  I have the ethics commission to contend with.

195.    On or about November 15, 2021, SMEDLEY sent a text message to ZUBAIR AL ZUBAIR reminding him about the proposed agreement: "Need agreement so I can make the calls."

196.    On or about November 16, 2021, ZUBAIR AL ZUBAIR responded to SMEDLEY with the following text message:

> We need to include/insert goals and kpi's within it.
>
> Can't have the relationship filled with unfulfilled and unaccomplishable promises and commitments.
>
> ...I'd rather pay on a commission basis in that sense and s tructure.
>
> So, before anything gets signed let's get an addendum of shortlisted goal(s) that shall be immediately achieved throughout the relationship.

197.    On or about November 16, 2021, ZUBAIR AL ZUBAIR forwarded the text messages described in paragraphs 195 and 196 to MUZZAMMIL AL ZUBAIR, along with the following message: "This [n****] Mike off his rocker if he think it going to get signed without set standards."

198.    On or about November 19, 2021, SMEDLEY sent the following messages to ZUBAIR AL ZUBAIR:

> Jobs ohio wants to set a call next with us. They have a search team and an i.t. person from China that can aid in finding potential sites. Whats your schedule like next week before Thanksgiving

199.    On or about November 29, 2021, SMEDLEY arranged for an initial call with Jobs Ohio.

200.    On or about November 29, 2021, ZUBAIR AL ZUBAIR and MUZZAMMIL AL
ZUBAIR exchanged the following messages:

| | |
|---|---|
| ZUBAIR: | [Image of an online meeting with SMEDLEY and State of Ohio] |
| ZUBAIR: | Mike stepped up |
| MUZZAMMIL: | Who's that? |
| ZUBAIR: | Smedley and the government |
| MUZZAMMIL: | Okay shmedley |

201.    On or about December 1, 2021, MUZZAMMIL AL ZUBAIR withdrew
approximately $20,000.

202.    In or around December 2021 ZUBAIR AL ZUBAIR arranged an in person
meeting with SMEDLEY.

203.    On or about December 7, 2021, ZUBAIR AL ZUBAIR texted SMEDLEY "Let's
do tomorrow evening?"

204.    On or about December 14, 2021, SMEDLEY and ZUBAIR AL ZUBAIR
exchanged the following text messages:

| | |
|---|---|
| SMEDLEY: | Got a call from an Alex in D.c. asking if you are the economic development adviser to the Mayor.  Haven't to return the call yet |
| ZUBAIR: | Hmmm …. Don't know him |
| ZUBAIR: | They may be referencing our website |
| ZUBAIR: | Find out who he is if you can |
| ZUBAIR: | Appreciate it |

205.    On or about December 22, 2021, ZUBAIR AL ZUBAIR sent SMEDLEY a text
message stating "the defense you provide for [persons known to the Grand Jury] makes me think
we haven't paid you a single cent or have ever come to any form of agreement with you".

206.    On or about December 25, 2021, SMEDLEY responded to the above-referenced text message from ZUBAIR AL ZUBAIR, stating, "For me it was never about money.  Only to the degree if money was made … ."

207.    On or about April 7, 2022, ZUBAIR AL ZUBAIR sent MUZZAMMIL AL ZUBAIR a text message asking, "Can you book the Marble Room for Saturday with Mike and Land Bank president[?]"

208.    On or about April 9, 2022, ZUBAIR AL ZUBAIR offered a dinner at the Marble Room Steakhouse to SMEDLEY.

209.    On or about April 10, 2022, SMEDLEY and ZUBAIR AL ZUBAIR exchanged the following text messages:

| | |
|---|---|
| SMEDLEY: | When you get some time would like to get your feedback about last night |
| ZUBAIR: | Absolutely |
| SMEDLEY: | Call me when you get some time I'm meeting [a person known to the Grand Jury] today and can convey your sentiments if you want to move forward |
| ZUBAIR: | Absolutely?  Definitely want to move forward No question about it |
| […] | |
| SMEDLEY: | Th for dinner last night, you're a hellava host |
| ZUBAIR: | haha Thank you for joining us and making this happen |

210.    On or about May 20, 2022, ZUBAIR AL ZUBAIR provided a meal at the Marble Room Steakhouse to SMEDLEY.

211.    On or about May 29, 2022, SMEDLEY and ZUBAIR AL ZUBAIR exchanged the following text messages:

| | |
|---|---|
| SMEDLEY: | When can I get the wagyu today |
| ZUBAIR: | Mmmm I'll call you when I wrap up hetr |

212.    On or about July 11, 2022, SMEDLEY and ZUBAIR AL ZUBAIR exchanged the
following messages:

| | |
|---|---|
| SMEDLEY: | Man I have people who are asking if this is real and I keep saying yes. But we haven't moved the needle in a month |
| ZUBAIR: | Imma make up for it |
| SMEDLEY: | I got your back and you keep leaving me hanging |
| ZUBAIR: | Not anymore |
| | Appreciate you beyond belief |
| | … More than you know |
| ZUBAIR: | That's why you need to get that offer to me |
| ZUBAIR: | It'll all be in your hands |
| SMEDLEY: | You won't take a loss and I can guarantee it |

213.    On or about July 11, 2022, SMEDLEY sent ZUBAIR AL ZUBAIR a text
message containing a link to an article concerning real estate development in East Cleveland and
Cleveland, Ohio.

214.    On or about July 12, 2022, MUZZAMMIL AL ZUBAIR sent ZUBAIR AL
ZUBAIR and SMEDLEY an email with the subject: "Fwd: LOI Smedley."  Attached to the
email was a document reproduced below:

51

Dubai Bridge Investments LLC
Pepper Pike OH

July 12, 2022

Michael Smedley
East Cleveland OH

RE:     Letter of Intent (non-binding)
        Venture of Michael Smedley in East Cleveland real estate

Mr. Smedley:

Dubai Bridge Investments LLC ("DBI") understands that you are considering a business venture
that will invest in real estate in or about East Cleveland OH.  If so, DBI would have an interest in
possibly investing in the venture with you.

Of course, before any investment by DBI would be made, numerous details would have to be
worked out such as ownership percentages, amount of investment, profit sharing, company
control and multiple others.  DBI is interested in negotiating with you to see if terms can be
reached on a possible investment by DBI in your proposed venture.

Please consider this letter as an expression of interest in your proposed venture, but not as a
binding commitment to invest in your venture.

Sincerely,

DUBAI BRIDGE INVESTMENTS LLC

_____

_____

(Name and Title)

215.    On or about August 1, 2022, SMEDLEY sent a text message to ZUBAIR AL

ZUBAIR, stating, "You never sent me the language for the letter," and asking, "what time do

you want to come to city hall[?]"

216.    On or about August 1, 2022, SMEDLEY sent a text message to ZUBAIR AL

ZUBAIR stating, "Mayor agrees with you being the international economic advisory person with

52

business cards and an mou with you directly," to which ZUBAIR AL ZUBAIR replied, "Appreciate you."

217. On or about August 10, 2022, a person known to the Grand Jury sent a text message to SMEDLEY stating, "[I am a DBI associate known to the Grand Jury,] DBI's Portfolio Manager. How are we moving along now that you and Zubair have an understanding on structure re: your real estate company?"

218. On or about August 11, 2022, ZUBAIR AL ZUBAIR sent SMEDLEY a text message containing language to be inserted in a letter on East Cleveland letterhead in support of a City of East Cleveland partnership with ZUBAIR AL ZUBAIR's wife.

219. On or about August 11, 2022, SMEDLEY sent ZUBAIR AL ZUBAIR a text message stating, "Can't reach [a DBI associate known to the Grand Jury], suppose to be at auction."

220. On or about August 11, 2022, after receiving the above message from SMEDLEY, ZUBAIR text messaged MUZZAMMIL AL ZUBAIR stating, "Tell [a DBI associate known to the Grand Jury] to manage Mike."

221. On or about August 11, 2022, after the above messages, a DBI associate known to the Grand Jury sent a text message to SMEDLEY stating, "Property bought."

222. On or about August 11, 2022, ZUBAIR AL ZUBAIR provided food to SMEDLEY.

223. On or about August 11, 2022, SMEDLEY directed an employee of East Cleveland to email to ZUBAIR AL ZUBAIR a letter, titled, "Partnership Query DrAlFalasi," signed by SMEDLEY in his capacity of East Cleveland Chief of Staff and written on East

Cleveland letterhead.  The letter stated that "The City of East Cleveland and its mayor […] are privileged and pleased to engage in partnership with [ZUBAIR's wife]."

224.    On or about August 12, 2022, ZUBAIR AL ZUBAIR and SMEDLEY exchanged text messages in which ZUBAIR AL ZUBAIR requested SMEDLEY add additional information concerning ZUBAIR AL ZUBAIR's wife in the East Cleveland letter, and SMEDLEY agreed.

225.    On or about August 13, 2022, SMEDLEY sent ZUBAIR AL ZUBAIR a text message stating, "Thank you for the car, I appreciate you bro."

226.    On or about August 18, 2022, ZUBAIR AL ZUBAIR and SMEDLEY exchanged the following messages:

| | |
|---|---|
| ZUBAIR: | Gentle reminder on those biz cards |
| SMEDLEY: | Cards ordered |
| SMEDLEY: | Will give letter in the a.m. |

227.    On or about August 20, 2022, SMEDLEY exchanged text messages with [DBI associates known to the Grand Jury] concerning the property purchased on August 11, 2022, referenced above.   SMEDLEY stated, "we need to choose a bank for the company and make a deposit asap," and further confirmed that DBI was "fronting the money for the 3 houses."

228.    On or about August 22, 2022, ZUBAIR AL ZUBAIR signed a Memorandum of Understanding with the City of East Cleveland.  The Mayor of East Cleveland signed the agreement on behalf of the City.  The stated purpose of the agreement was to "authorize Mr. Zubair to establish International Business, Service, Technological, Infrastructure and Financial Relationships in the Middle East, Asia and Africa."  The agreement described ZUBAIR AL ZUBAIR as "established in the international community as an entrepreneur, investment broker and philanthropist."  As part of the agreement, the City of East Cleveland "recognize[d]

[ZUBAIR AL ZUBAIR] as its voluntary liaison serving in a capacity as the City's International Economic Advisor for the purpose of increasing investment in the City of East Cleveland."

229.　On or about August 30, 2022, ZUBAIR AL ZUBAIR sent SMEDLEY a text message asking, "What's up with those biz cards as well?  Also, what's the allowances on an email for me?"

230.　On or about August 30, 2022, ZUBAIR AL ZUBAIR sent an email to the United States Department of State non-immigrant visa email address, and carbon copied SMEDLEY at his official East Cleveland email address and MUZZAMMIL AL ZUBAIR.  In the email ZUBAIR AL ZUBAIR used his title of "chief Foreign Economical Advisor to the City of East Cleveland, city hall and the Honorable Mayor" and requested that the State Department facilitate the visa process for a person known to the Grand Jury.

231.　On or about August 30, 2022, ZUBAIR AL ZUBAIR sent a second, separate email to the United States Department of State Dubai business visa email address, and carbon copied SMEDLEY at his official East Cleveland email address.  The second email contained the same information and requests as the first August 30, 2022, email, referenced above.

232.　On or about August 31, 2022, ZUBAIR AL ZUBAIR provided a meal at Etna Restaurant to SMEDLEY.

233.　On or about September 1, 2022, SMEDLEY directed an employee of the City of East Cleveland to create East Cleveland business cards for ZUBAIR AL ZUBAIR containing an official title of "International Economic Advisor."

234.　On or about September 2, 2022, SMEDLEY sent ZUBAIR AL ZUBAIR a text message stating, "I propose you promote me to v.p. of Dubai Bridge investments so that I can move this stuff."

235.    On or about September 2, 2022, SMEDLEY sent a text message to ZUBAIR AL ZUBAIR containing a picture proof of an East Cleveland business card for ZUBAIR AL ZUBAIR with the official title "International Economic Advisor."

236.    On or about September 6 and 7, 2022, after Victim 2 reported the theft of their cryptocurrency mining machines described in paragraph 51 to the Euclid Police Department, SMEDLEY contacted ZUBAIR AL ZUBAIR to inform him of the investigation.  SMEDLEY learned of the investigation when Euclid Police contacted the City of East Cleveland city hall about ZUBAIR AL ZUBAIR.  SMEDLEY and ZUBAIR AL ZUBAIR exchanged the following messages:

| | |
|---|---|
| SMEDLEY: | What's going on in the city of Euclid |
| ZUBAIR: | What do you mean |
| SMEDLEY: | They are investigating dbi [Dubai Bridge Investments] for 8mill in theft |
| ZUBAIR: | What |
| SMEDLEY: | Received word today |
| ZUBAIR: | Never heard of it |
| SMEDLEY: | Something about goods in a warehouse |
| ZUBAIR: | Where did that come from |
| ZUBAIR: | Can you get me the detectives name.  My lawyers are going to tackle this! |
| SMEDLEY: | Didn't leave a name. You may wantnto call the Euclid police dept |
| ZUBAIR: | Thanks they're on it |
| SMEDLEY: | Had our police chief check, no active investigation |

237.    On or about September 13, 2022, ZUBAIR AL ZUBAIR provided a meal at M Italian Restaurant in Chagrin Falls, Ohio, to SMEDLEY.

238.    On or about September 14, 2022, SMEDLEY obtained an email sent to his personal and official email address in East Cleveland, with the subject line "East Cleveland Site Plan," which contained information on a site in East Cleveland from the Cuyahoga County Land Bank, which he then forwarded to ZUBAIR AL ZUBAIR.

239.    On or about September 15, 2022, SMEDLEY obtained an email sent to his personal and official email address in East Cleveland, with the subject line "Apartment Building," which contained information on properties for sale at the Cuyahoga County Land Bank, which he then forwarded to ZUBAIR AL ZUBAIR.

240.    On or about September 17, 2022, ZUBAIR AL ZUBAIR and SMEDLEY exchanged the following text messages:

| | |
|---|---|
| ZUBAIR: | Afternoon |
| | Are you and the mayor attending the game tomorrow? |
| | Food and everything ! |
| ZUBAIR: | Am I sending you and the mayor suite tickets for tomorrow? |
| SMEDLEY: | Need to check with the mayor if he is available |
| ZUBAIR: | What about you |
| | Should I send yours over? |
| ZUBAIR: | Starts at 1pm |
| ZUBAIR: | Best beef ribs in town! (at the game) |
| SMEDLEY: | Who else will be there |
| ZUBAIR: | The usual suspects |
| | + our banker |
| | Super internal gathering |
| SMEDLEY: | I'm in! |

241.    On or about September 17, 2022, ZUBAIR AL ZUBAIR sent SMEDLEY a text message containing a link for a ticket to a Cleveland Browns football game against the New York Jets.

242.    On or about September 21, 2022, SMEDLEY sent ZUBAIR AL ZUBAIR a text message asking, "What's up can I bring someone with me to the browns game[?]"

243.    On or about September 21, 2022, ZUBAIR AL ZUBAIR sent SMEDLEY a text message containing a link for two tickets to a Cleveland Browns football game versus the Pittsburgh Steelers, and a separate text message containing a link for a parking pass for the game.

244.    On or about September 26, 2022, SMEDLEY provided City of East Cleveland business cards for ZUBAIR AL ZUBAIR to an associate of ZUBAIR AL ZUBAIR's.

245.    On or about October 16, 2022, ZUBAIR AL ZUBAIR sent SMEDLEY a text message containing a link for a ticket to a Cleveland Browns football game versus the New England Patriots.

246.    On or about October 21, 2022, ZUBAIR AL ZUBAIR sent a voice message to SMEDLEY asking, "what's going on with those badges? Those cop badges? Just a reminder."

247.    On or about October 28, 2022, ZUBAIR AL ZUBAIR sent the following messages to SMEDLEY:

| | |
|---|---|
| ZUBAIR: | Outside |
| ZUBAIR: | Thank you so much for the badges |
| ZUBAIR: | Greatly appreciated |
| SMEDLEY: | You're welcome |
| ZUBAIR: | And thank you for having me over |
| | Wonderful cozy home |
| SMEDLEY: | Open invitation |

248.    On or about October 31, 2022, ZUBAIR AL ZUBAIR and SMEDLEY exchanged the following text messages:

| | |
|---|---|
| ZUBAIR: | Wanna come to the game tonight? |
| SMEDLEY: | Sure |
| SMEDLEY: | Plus 1? |
| ZUBAIR: | Sure |
| ZUBAIR: | [links for two tickets to a Cleveland Browns football game versus the Cincinnati Bengals, and for a parking pass to that game] |

All in violation of Title 18, United States Code, Section 371.

<u>COUNT 27</u>
(Bribery Concerning Programs Receiving Federal Funds, 18 U.S.C. §§ 666(a)(1)(B) and 2)

The Grand Jury further charges:

249.    The factual allegations of paragraphs 1 through 26, 30 through 133, 154 through 156, 159, and 161 through 248 of this Superseding Indictment are re-alleged and incorporated by

reference as if fully set forth herein.

250. From in or around January 1, 2021, through in or around December 31, 2021, in the Northern District of Ohio, Eastern Division, Defendant MICHAEL LEON SMEDLEY, being an agent of a local government, to wit, the City of East Cleveland, Ohio, which in a one-year period received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and a series of transactions of the City of East Cleveland that involved $5,000 or more, to wit: SMEDLEY solicited, demanded, accepted, and agreed to accept food, money, future employment and other things of value from Zubair Al Zubair and Muzzammil Al Zubair in exchange for SMEDLEY agreeing to provide and providing, through the use of his official position, favorable treatment and official action.

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNT 28
(Bribery Concerning Programs Receiving Federal Funds, 18 U.S.C. §§ 666(a)(2) and 2)

The Grand Jury further charges:

251. The factual allegations of paragraphs 1 through 26, 30 through 133, 154 through 156, 159, and 161 through 248 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

252. From in or around January 1, 2021, through in or around December 31, 2021, in the Northern District of Ohio, Eastern Division, Defendants ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, and MUZZAMMIL

MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, did corruptly give, offer, and agree to give things of value to any person intending to influence and reward an agent of a local government, to wit, the City of East Cleveland, Ohio, which in a one-year period received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of federal assistance, in connection with a transaction and a series of transactions of the City of East Cleveland that involved $5,000 or more, to wit:  Defendants ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR did give, offer to give, and agree to give Michael Smedley and others food, money, and other things of value, including checks of $10,000 and $20,000 and offers of future employment, in exchange for Smedley agreeing to provide and providing, through the use of his official position, favorable treatment and official action.

All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

COUNT 29
(Bribery Concerning Programs Receiving Federal Funds, 18 U.S.C. §§ 666(a)(1)(B) and 2)

The Grand Jury further charges:

253.    The factual allegations of paragraphs 1 through 26, 30 through 133, 154 through 156, 159, and 161 through 248 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

254.    From in or around January 1,  2022, through in or around December 31, 2022, in the Northern District of Ohio, Eastern Division, Defendant MICHAEL LEON SMEDLEY, being an agent of a local government, to wit, the City of East Cleveland, Ohio, which in a one-year period received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of federal assistance, corruptly

solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with a transaction and a series of transactions of the City of East Cleveland that involved $5,000 or more, to wit: Defendant SMEDLEY solicited, demanded, accepted, and agreed to accept food, money, future employment, and other things of value, including sports tickets and support for SMEDLEY's real estate business, from Zubair Al Zubair and Muzzammil Al Zubair, in exchange for SMEDLEY agreeing to provide and providing, through the use of his official position, favorable treatment and official action.

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

### COUNT 30
(Bribery Concerning Programs Receiving Federal Funds, 18 U.S.C. §§ 666(a)(2) and 2)

The Grand Jury further charges:

255.  The factual allegations of paragraphs 1 through 26, 30 through 133, 154 through 156, 159, and 161 through 248 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

256.  From in or around January 1, 2022, through in or around December 31, 2022, in the Northern District of Ohio, Eastern Division, Defendants ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, and MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, did corruptly give, offer, and agree to give things of value to any person intending to influence and reward an agent of a local government, to wit, the City of East Cleveland, Ohio, which in a one-year period received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of federal assistance, in connection with a

transaction and a series of transactions of the City of East Cleveland that involved $5,000 or more, to wit: Defendants ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR did give, offer to give, and agree to give Michael Smedley and others food, sports tickets, and support for Smedley's real estate business in exchange for Smedley agreeing to provide and providing, through the use of his official position, favorable treatment and official action.

All in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

## COUNT 31
(Conspiracy to Commit Honest Services Wire Fraud, 18 U.S.C. § 1349)

The Grand Jury further charges:

257.     The factual allegations of paragraphs 1 through 26, 30 through 133, 154 through 156, and 159 through 248 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

258.     At all times relevant to this Superseding Indictment, the City of East Cleveland and East Cleveland City Council had an intangible right to the honest services of their employees. As an employee for the City of East Cleveland, Defendant MICHAEL LEON SMEDLEY owed the City of East Cleveland and the East Cleveland City Council a duty to refrain from receiving bribes and kickbacks in exchange for SMEDLEY's actions and influence.

259.     From in or around January 2021 through in or around January 2023 in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants MICHAEL LEON SMEDLEY, ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, and others known and unknown to the Grand Jury did knowingly and intentionally combine, conspire, confederate and agree with others to commit federal fraud offenses, that is, to devise a scheme and artifice, to wit, the scheme and artifice to defraud and

deprive the City of East Cleveland and the East Cleveland City Council of their intangible right to the honest and faithful services of SMEDLEY through bribes and kickbacks, and the concealment of material information related thereto, as described in the factual allegations of Paragraphs 157 and 159 through 246 of this Superseding Indictment, and for purposes of executing such scheme and artifice to transmit and cause to be transmitted by means of wire communication in interstate commerce any writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Sections 1343 and 1346.

260.    The objects of the conspiracy were: for Defendants, having devised a scheme and artifice to defraud the City of East Cleveland and East Cleveland City Council of their intangible right to the honest services of SMEDLEY, to solicit, offer and accept bribes and kickbacks from ZUBAIR AL ZUBAIR and MUZZAMMIL AL ZUBAIR in return for SMEDLEY taking or causing to be taken favorable official actions; (b) for SMEDLEY to enrich himself and his designees by soliciting and accepting things of value from ZUBAIR AL ZUBAIR, MUZZAMMIL AL ZUBAIR, and others in return for performing and promising to perform favorable official action, both as requested and as the opportunities arose, through corrupt means; and (c) for Defendants and their co-conspirators to conceal, and encouraged others to conceal, from the City of East Cleveland, the East Cleveland City Council, the public, and law enforcement their corrupt relationship with one another and to maintain SMEDLEY's employment at the City of East Cleveland so they could continue to solicit, offer and accept bribes and kickbacks in return for future favorable official acts.

261.    It was part of the conspiracy that: Defendants and their co-conspirators employed the same manner and means described in Count 26 of this Superseding Indictment.

## Acts in Furtherance of the Conspiracy

262.     In furtherance of the conspiracy, and to effect the objects thereof, a member of the

conspiracy committed the overt acts described in Count 26 of this Superseding Indictment and

the acts described in the following paragraphs, in the Northern District of Ohio, and elsewhere:

263.     On or about the following dates, Defendants and others, for purposes of executing

the above-described scheme and artifice, caused to be transmitted by means of wire

communications in interstate and foreign commerce the writings, signs, signals, pictures and

sounds described below:

| Approximate Date | Description | Sender | Recipient |
|---|---|---|---|
| November 9, 2021 | Email from SMEDLEY to ZUBAIR AL ZUBAIR with "Agreement" document | SMEDLEY | ZUBAIR AL ZUBAIR |
| July 12, 2022 | Letter of Intent between ZUBAIR AL ZUBAIR and SMEDLEY | ZUBAIR | SMEDLEY |
| August 11, 2022 | Letter for ZUBAIR AL ZUBAIR's wife | SMEDLEY | ZUBAIR AL ZUBAIR |
| August 30, 2022 | Email to State Department Non-Immigrant Visa Section | ZUBAIR | State Department NIV Section; SMEDLEY |
| August 30, 2022 | Email to State Department Dubai Business Visa Section | ZUBAIR | State Department Dubai Visa Section; SMEDLEY |
| September 14, 2022 | Email concerning "East Cleveland Site Plan" | SMEDLEY | ZUBAIR AL ZUBAIR |
| September 15, 2022 | Email concerning "Apartment Building" | SMEDLEY | ZUBAIR AL ZUBAIR |

All in violation of Title 18, United States Code, Section 1349.

## COUNT 32
(Conspiracy to Commit Extortion Under Color of Official Right, 18, U.S.C. § 1951(a))

The Grand Jury further charges:

264.     The factual allegations of paragraphs 1 through 26, 30 through 133, 154 through

156, and 159 through 248 of this Superseding Indictment are re-alleged and incorporated by reference as if fully set forth herein.

265.    The activities and operations of the City of East Cleveland affected interstate commerce.

266.    From in or around January 2021 through in or around January 2023 in the Northern District of Ohio, Eastern Division, and elsewhere, Defendants MICHAEL LEON SMEDLEY, ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, aka ZUBAIR MEHMET ABDUR RAZZAQ, MUZZAMMIL MUHAMMAD AL ZUBAIR, aka MUZZAMMIL IBN MUHAMMAD, and others known and unknown to the Grand Jury did knowingly and intentionally combine, conspire, confederate and agree with each other to obstruct, delay, and affect commerce and the movement of any article and commodity in commerce by extortion, that is, for SMEDLEY, a public official, to obtain and attempt to obtain property not due to him and his office, from ZUBAIR AL ZUBAIR,  MUZZAMMIL AL ZUBAIR, their businesses, and others, with their consent, under color of official right, knowing these things of value were provided in exchange for SMEDLEY performing official action on behalf of the City of East Cleveland.

All in violation of Title 18, United States Code, Section 1951(a).

## FORFEITURE

The Grand Jury further alleges:

267.    The allegations of Counts 1 through 32 are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).  As a result of the foregoing offenses, Defendants ZUBAIR MEHMET ABDUR RAZZAQ AL ZUBAIR, MUZZAMMIL

MUHAMMAD AL ZUBAIR and MICHAEL LEON SMEDLEY, shall forfeit to the United

States all property, constituting or derived from proceeds traceable to the violations charged in

Counts 1, 2-15, 21, and 26-31; and all property involved in the violations charged in Counts 16,

17-20, and 32, or any property traceable to such property; including, but not limited to, the

following:

A.     The following 52 Firearms seized from ZUBAIR AL ZUBAIR:

1.     FNH USA LLC 509 9mm caliber pistol SN: GKS0228505;
2.     Zastava Z-PAP M70 7.62 caliber rifle SN: Z70-103677;
3.     Romarm/CUGIR (Century International Arms) Micro Draco 7.62 caliber pistol SN: 22PMD-31131;
4.     Masterpiece Arms Defender 9mm caliber pistol SN: FX35630;
5.     Sig-Sauer P320 9mm caliber pistol SN: 58J059218;
6.     Pioneer Arms Corporation Hellpup 7.62 caliber pistol SN: PAC1170186;
7.     Sig-Sauer P320 9mm caliber pistol with empty magazine SN: 58B196797;
8.     Steyr M9-A2 9mm caliber pistol SN: 3215917;
9.     Zastava PAP M92 PV 7.62 caliber Rifle with empty magazine contained in gun case. SN: M92PV013546;
10.     FNH USA LLC 509 9mm caliber Pistol contained in gun case SN: GKS0141575;
11.     Walther CCP 9mm caliber Pistol SN: FDF0399;
12.     SCCY Industries LLC CPX-2 9mm caliber Pistol SN: C182860;
13.     Springfield Armory 1911 A1 .45 caliber Pistol SN: NM91000;
14.     Springfield Armory/HS Produkt XDM Elite 9mm caliber Pistol SN: BA348769;
15.     Shadow Systems LLC DR920 9mm caliber Pistol SN: SSX005434;
16.     CZ USA CZ P-10F 9mm caliber Pistol with magazine SN: UB18877;
17.     Kimber Ultra Raptor II .45 ACP caliber Pistol SN: KU74646;
18.     Smith & Wesson SW1911PC .45 caliber Pistol SN: UFD9781;
19.     FNH USA LLC 509 LS EDGE 9mm caliber Pistol with empty magazine SN: GKS0193320;
20.     CZ CZ75 SP-01 9mm caliber Pistol SN: FD360785;
21.     Kimber Micro 9 Raptor 9mm caliber Pistol SN: TB0044209;
22.     Ruger SP101 .357 Magnum caliber Revolver SN: 578-33522;
23.     Smith & Wesson SW1911PC .45 caliber Pistol SN: UFE0349;
24.     Colt Government .45 caliber Pistol SN: 08407EGA;
25.     Canik 55 TP-9SFX 9mm caliber Pistol SN: 21BC72871;
26.     Zastava ZPA P92 7.62 caliber Pistol SN: ZPA P92;
27.     Keltec, CNC Industries PLR-22 .22 caliber Pistol SN: U1P26;
28.     Ruger Mini 14 Ranch.223 caliber Rifle SN: 581-88840;
29.     Keltec, CNC Industries CMR-30 .22 caliber Rifle SN: Y5K59;

30.     S.C. Nova Grup S.R.L. Draco NAK9 9 caliber Pistol SN: RON2164830;
31.     Remington Arms Company, Inc. 870 12-gauge Shotgun SN: RAF014506;
32.     F.N. (FN HERSTAL) PS90 5.7 caliber Rifle SN: FN142005;
33.     Sig-Sauer (Sig Arms) MPX Multi caliber Pistol SN: 62F020735;
34.     Keltec CNC Industries KS7 12-gauge shotgun SN: QE987;
35.     Sharps Bros Mfg. The Jack Stripped Lower Receiver MULTI Caliber SN: A24925;
36.     ZEV Technologies Inc.  ZEV-FL AR15 Forged Lower Receiver SN: ZEV-FL;
37.     Steyr Arms Inc. AUG/A3 M1 5.56 caliber Rifle SN: 21USA658;
38.     Great Lakes Firearms GL-15 MULTI caliber Rifle SN: 1051.7100;
39.     Thompson M1 Carbine .45 caliber Rifle SN: KC9008;
40.     Sig Sauer SIG MCX 7.62 caliber Rifle SN: 63J013511;
41.     Springfield Armory Saint Multi caliber Rifle SN: ST401403;
42.     Century Arms International VSKA 7.62 caliber Rifle SN: SV7077955;
43.     Unique AR's McCall ID Multi caliber Rifle SN: UAR211594;
44.     Sig Sauer lower pistol frame (no serial number);
45.     Keltec CNC Industries PMR-30 .22 caliber Pistol SN: WVQ49;
46.     Glock G-26 GEN5 9mm caliber Pistol SN: AHBF862;
47.     Savage Stance 9mm caliber Pistol SN: AA04466;
48.     CZ CZ75 P-01 9mm caliber Pistol SN: D344459;
49.     Ruger PC Charger 9mm caliber Pistol SN: 913-40969;
50.     Springfield Armory HS Produkt Hellion 5.56 caliber Rifle SN: BBS14275;
51.     Akkurt Silah San Garaysar Fear-114 12-gauge Shotgun SN: 21A-004048; and
52.     Action Arms LTD. (Israel Weapon Ind.) UZI B 9mm caliber SubMachine Gun SN: SA63334.

B.      The following 27 pieces of Miscellaneous Jewelry seized on August 8, 2023,

seized from ZUBAIR AL ZUBAIR:

1.      Richard Mille Watch SN: RM11-03RG/003;
2.      Richard Mille Watch SN: RM11-03CAFQ/2816;
3.      Richard Mille SN: RM11AORG-ATZ/1168;
4.      Richard Mille Watch SN: RM11-03CA-FQ104/200;
5.      Richard Mille Watch SN: RM011AGTI/6688;
6.      Richard Mille Watch no glass front SN: RM35-02FQ/028;
7.      Richard Mille Watch SN: RM011AORG-ATZ/6698;
8.      Richard Mille Watch SN: RM56-01ANSAPHR;
9.      Richard Mille Watch SN: RM53-01CAPR02;
10.     Richard Mille Watch SN: RM67-02FQ002;
11.     Richard Mille Watch SN: RM027AKCA3450;
12.     Richard Mille Watch Ralph Nadal Edition white SN: RM61-01-AN-CATZP/001;

13.     Richard Mille Watch gray band; black dial w/ no glass SN: unknown;
14.     Richard Mille Watch SN: RM11-03MCLCA-FQMCL02;
15.     Richard Mille Watch red band; white dial  SN: unknown;
16.     Richard Mille Watch SN: RM11-03RG-003;
17.     Rolex Watch SN: CL572200;
18.     Rolex Watch Model 5LX SN: unknown;
19.     Rolex Watch blue face; red dial SN: unknown;
20.     Rolex Watch white face; blue dial; band and face separate SN: unknown;
21.     Rolex Watch Red and Blue Dial model ST9 SN: unknown;
22.     Audemars Piguet Watch SN: F54328;
23.     Audemars Piguet Watch SN: J26837;
24.     Patek Philippe Watch SN: A384EAP;
25.     Audemars Piguet Watch SN: H57528;
26.     Patek Philippe Watch with Leather Band no SN; and
27.     Pateck Philippe Watch SN: A384FBP;

C.     The following 31 miscellaneous firearms seized on August 8, 2023, from

MUZZAMMIL AL ZUBAIR:

1.     Keltec Industries P50 5.7 caliber pistol SN: AADF49;
2.     Colt King Cobra .357 caliber Revolver SN: RA255302;
3.     FNH USA LLC, model 509 9mm caliber pistol SN: GKS0255570;
4.     Sig Sauer P320 9mm caliber pistol SN: 58H275147;
5.     Kimber model K6S .357 caliber Revolver SN: RV091201;
6.     Glock G-19 GEN4 9mm caliber pistol SN: BUYG094;
7.     Keltec Industries model PMR-30 .22 caliber pistol SN: WWPJ64;
8.     Glock model G-17L 9mm caliber pistol with receiver 20/20 stabilizer kit
        SN: BFSB910;
9.     Beretta Pietro 92x 9mm caliber pistol SN: BST20974;
10.    CZ CZ75 SP-01 9mm caliber pistol SN: F307720;
11.    Century Arms Draco NAK-9 9mm caliber pistol SN: RON2161137;
12.    CZ model CZ P-07 9mm caliber pistol SN: A894068;
13.    Glock G-43X 9mm caliber pistol SN: BXCD815;
14.    Glock G-26 GEN5 9mm caliber pistol SN: AHAH764;
15.    Glock G-20 10mm caliber pistol SN: BWTH141;
16.    Glock G-45 9mm caliber pistol SN: BUFC635;
17.    Glock G-31 GEN4 .357 caliber pistol SN: BVYE675;
18.    Ruger LCP .380 caliber pistol SN: 379003534;
19.    Charter Arms Santa Fe Sky .38 Special caliber Revolver SN: 22L28253;
20.    Romarm/Cuigar Micro Draco 7.62 caliber rifle SN: 21PMD-26508;
21.    Taurus PT111 Millennium G2 9mm caliber pistol SN: TKO91746;
22.    Kimber Micro 9 Special Edition 9mm caliber pistol SN: PB0397812;
23.    Spike's Tactical LLC ST15 multi-caliber Rifle SN: NSL162425;
24.    Glock G19X 9mm caliber pistol SN: BWSV135;
25.    Glock G-26 9mm caliber pistol SN: BWEG829;

26.    Ruger PC Charger 9mm caliber pistol SN: 913-09675;
27.    Century Arms International BFT47 7.62 caliber rifle SN:BFT47012283;
28.    Mossberg 590 12-gauge shotgun SN: V1345375;
29.    Sig Sauer MPX Multi caliber rifle SN: 62F016679;
30.    CZ Scorpion EVO 3 S1 9mm caliber pistol SN: E043468;
31.    Brigade Manufacturing Inc BM-F-9 multi caliber pistol SN: 34137F;

D.      The following 12 pieces of miscellaneous jewelry seized on August 8, 2023,

form MUZZAMMIL AL ZUBAIR:

1.    Black Richard Mille Watch SN: unknown;
2.    Black Richard Mille Watch SN: unknown;
3.    White Richard Mille Watch SN: unknown;
4.    Silver Colored Audemars Piguet Watch SN: unknown;
5.    Clear Hublot Watch SN: unknown;
6.    Black Clear Stone Encrusted Audemars Piguet Watch SN: unknown;
7.    Blue Patek Phillippe Watch SN: unknown;
8.    Black face, black band Royal Oak Watch SN: H57475;
9.    Brown face/Silver colored brown bad, Royal Oak Watch SN: F54328;
10.    Black face Rolex silver colored band watch SN: unknown;
11.    White Face Silver colored Patek Phillippe Watch SN: unknown;
12.    Blue face/silver colored black leather band Patek Phillippe watch SN: unknown; and

E.      2021 Indian Scout Bobber Sixty Motorcycle, VIN: 56KMTB118M3173002,

seized from MUZZAMMIL AL ZUBAIR.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government

Act of 2002.

69